**COMPAGNIE DES BAUXITES DE GUINEE, A Corporation, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. A. No. 75–1228.**

United States District Court,
W.D. Pennsylvania.

June 21, 1983.

Cloyd R. Mellott, Robert Doty, Andrew Roman, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for plaintiff.

Randall J. McConnell, Jr., Stephen R. Mlinac, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

### I. Introduction

Plaintiff, Compagnie Des Bauxites De Guinee, ("CBG"), instituted this diversity action under the business interruption provisions of an all risk policy of insurance issued by Defendant Insurance Company of North America, ("INA"), for losses allegedly sustained as the result of an accident occurring March 26, 1974, when the boom of an item of equipment known as "Bucket Wheel No. 3" failed and collapsed, resulting in extensive damage to Bucket Wheel No. 3, which allegedly caused Plaintiff CBG to suffer a business interruption loss. Plaintiff CBG owns and operates in the Republic of Guinea, West Africa, a mining and processing plant for bauxite ore. Bucket

Wheel No. 3 is a large item of equipment which is used to reclaim dried bauxite stored in the Dried Ore Storage Building, located at Plaintiff CBG's bauxite processing and shiploading facilities in Kamsar, Guinea.

Defendant INA, on April 15, 1983, moved for the entry of summary judgment as a matter of law, contending that the Plaintiff CBG failed and omitted to provide a signed and sworn Proof of Loss within 60 days of the date of the damage, in violation of the provisions of the contract of insurance, and that Defendant INA was thereby severely prejudiced; and further, that the alleged damage to Bucket Wheel No. 3 did not constitute a sudden fortuitous and accidental event so as to cause coverage to attach, and that the cause of the damage suffered by Bucket Wheel No. 3 pre-existed the February 12, 1974 inception date of the contract of insurance. Both sides have thoroughly briefed the issues presented by Defendant INA's Motion, and hearing and argument on said Motion was held May 12, 1983. After considering the contentions of the parties, the Defendant's Motion will be granted on the grounds that no fortuitous event occurred for the reasons set forth in this Opinion.

### II. Undisputed Facts

It is CBG's contention, as evidenced in their Pre Trial Statement and Answers to Interrogatories, that the damage suffered by Bucket Wheel No. 3 on March 26, 1974, was due entirely to design errors incorporated into that item of machinery. CBG's position with respect to this cause of damage has always been consistent, and CBG has never denied this contention, even during the course of the argument on this Motion. See Transcript, May 12, 1983 at pp. 10–11.

The Report of Plaintiff's experts, O'Donnell & Associates, Inc., attached to and made a part of Plaintiff's Pre Trial Statement, states as follows:

2.0 CONCLUSION

Based upon our study and analysis, which is described in greater detail below,

it is our conclusion that the boom of the Bucket Wheel collapsed as a result of errors in its design. In reaching this conclusion as to the cause of the boom failure, we reviewed design drawings and specifications, photographs of the collapsed machine, reports written by the various interested parties speculating upon the cause of failure, hand and computer calculations, and other documents. Also, one of our engineers visited the site to observe the Bucket Wheel in operation and perform tests.

## 3.0 OBSERVATIONS AND ANALYSIS

.     .     .     .     .

A new machine should not fail early in its life while doing the job it was designed to perform. If it does, the design is defective. We have now verified by calculations, computer analyses and tests that the collapse was due to a fatigue failure caused by the stresses on the boom associated with reversal of slewing direction. These stresses were significantly larger than those used in designing the Bucket Wheel. Although these increased stresses were not large enough to produce visible damage to the boom, they eventually initiated a tiny crack at a highly stressed point which grew larger with each cycle until the boom suddenly collapsed on March 26, 1974.

.     .     .     .     .

### 3.2 Role of Prior Incidents

Some of the contemporaneous reports on the Bucket Wheel collapse suggested that overload incidents occurring prior to March 26, 1974, significantly contributed to the collapse of the boom. The fatigue analysis which we performed demonstrates to the contrary that the collapse occurred as a result of the cyclic stresses associated with normal operation, and not as a result of the prior incidents.

.     .     .     .     .

. . . Consequently, it is our conclusion that the collapse of the boom not only was attributable to normal operation, but would have occurred even if there had been no prior incidents. (Underlining Supplied).

Further, the Plaintiff's Pre Trial Report of O'Donnell and Associates also discusses the problem of overloading in the *Analysis and Observations* section as follows:

The reports on the Bucket Wheel accident consistently describe the collapse as occurring in two stages. Immediately prior to collapse, the Bucket Wheel was operating at normal loads less than its full rated capacity. Suddenly, the whole machine made an abrupt motion, and, almost immediately following this abrupt motion, the machine shut down. The reports concluded that the boom was already permanently deformed at this stage of the collapse. Such an abrupt collapse without warning and under normal loading suggests failure due to fatigue.

### III. *Discussion*

■ "All risk" policies of insurance cover only damages or losses arising from a fortuitous circumstance or casualty. Courts have utilized this concept of a "fortuitous" event as a fundamental principle of law in interpreting insurance contracts. The term "all risk" does not mean that "all losses" are covered; it is only those losses which are of a fortuitous nature or which are caused by a fortuitous event which are covered. The determination of whether an event is "fortuitous" is a question of law for the Court. *Avis v. Hartford Fire Insurance Co.*, 192 S.E.2d 593, 16 N.C.App. 588 (1972), on appeal, 195 S.E.2d 545, 283 N.C. 142 (1973). *See also Dow Chemical Co. v. Royal Indemnity Co.*, 635 F.2d 379 (5th Cir.1981); *Atlantic Lines Limited v. American Insurance Co.*, 547 F.2d 11 (2d Cir.1976); *Redna Marine Corporation v. Poland*, 46 F.R.D. 81 (S.D.N.Y.1969).

■ An all risk policy of insurance does not cover a certainty, and therefore a fortuitous event is required for coverage to attach, even under an all risk policy. A "fortuitous" event must be one which happens by chance or accident, unexpectedly or without known cause, accidental, or unde-

signed. *Black's Law Dictionary* (Rev. 4th Ed.1968). The damage or loss must result from an extraneous cause, and not from an inherent defect in the subject matter or from the inherent deficient qualities, nature and properties of the subject matter.

[T]he "all-risk" event so covered would not include an undisclosed event that existed prior to coverage, or an event caused by the consummation during the period of coverage of an indwelling fault in the goods that had existed prior to that coverage. Otherwise the underwriters are in the position of either having to pay for undisclosed loss or damage actually caused prior to the time of coverage or uncontemplated loss or damage caused from deteriorating agents present within the goods when the goods were shipped.

*Greene v. Cheetham,* 293 F.2d 933, 936–37 (2d Cir.1961). *See also Mellon v. Federal Insurance Co.,* 14 F.2d 997 (S.D.N.Y.1926) (A. Hand, J.). "Fortuity" requires the presence of a risk. Regardless of the contractual agreement of the parties, Courts have recognized that to permit insurance coverage for a non-fortuitous event would be contrary to public policy. "It must always be borne in mind that the policies are of *insurance* and not of warranty of soundness.... [T]he perils insured against are risks." *Mellon v. Federal Insurance Co., supra.*

█ From the undisputed facts as presented in this case, it is apparent that the damage suffered by Bucket Wheel No. 3 was caused by design errors incorporated into the Bucket Wheel. Under these circumstances, no sudden and fortuitous event occurred which gave rise to a business interruption loss during the period of policy coverage. Plaintiff's expert has indicated that the boom of the Bucket Wheel collapsed due to stresses significantly larger than those calculated and used in the design of the Bucket Wheel. Plaintiff's expert further concluded that the collapse of the boom was attributable to normal operations, and that said collapse occurred when the Bucket Wheel was operating at normal loads less than the full-rated capacity. This collapse could not be a sudden and fortui-

tous event, rather, it was the result of a gradual and cumulative deterioration caused by the very inherent deficiencies in the design of the Bucket Wheel. At the time of the collapse the machine was clearly being used in a normal manner, and in the course of normal operations it collapsed, which collapse was certain and inevitable due to the inherent design deficiencies, and was in no way caused by chance or happened unexpectedly.

There was no extraneous force to the boom of the Bucket Wheel from without, and the damage and resulting business interruption loss stemmed from the natural and predictable behavior and inherent qualities of the admittedly mal-designed Bucket Wheel.

Whether the design error was inadvertent or planned is of no consequence, since the collapse of the boom was inevitable from its date of design, which was prior to the issuance of the policy of insurance herein involved. It was thus inevitable and certain that during the period of the policy of insurance the boom of the Bucket Wheel would never be able to function properly, even under normal conditions, and it was likewise certain and inevitable that even prior to the inception of the policy of insurance a business interruption loss would result. The ultimate collapse of the boom of the Bucket Wheel was expected, certain, and predictable. Thus, the concept of risk, inherent in all policies of insurance, is missing in this case. No fortuitous event or casualty occurred during the period of coverage which gave rise to any liability on the part of Defendant INA.

█ It is also apparent from the Plaintiff's Expert Report of O'Donnell & Associates that in CBG's specifications the overall safety factor of 1.1, which CBG specified, was not adequate for the proper operation of the Bucket Wheel. In view of the fact that CBG solicited bids and eventually entered into a contract calling for the manufacture of an item of equipment with an insufficient safety factor, it is clear that the breakdown of the Bucket Wheel was inevi-

table and certain, and was not a fortuitous event. All risk policies are not "all loss" policies, and they are not contracts of warranty and guaranty.

CBG, however, contends that the boom of Bucket Wheel No. 3 collapsed because of a design error of which neither CBG nor INA were aware, and that this design error is a risk covered under the all risk policy and was a fortuitous event. Cases cited by CBG in support of the contention that the collapse of the boom of the Bucket Wheel was a fortuitous event which gave rise to coverage under the policy are factually distinguishable from the situation presented here. The cases relied upon by Plaintiff involve situations where external causes intervened, and the intervention of the external causes were the fortuitous circumstances which gave rise to coverage under the particular terms of those policies of insurance.

For example, in *Essex House v. St. Paul Fire & Marine Insurance Co.,* 404 F.Supp. 978 (S.D.Ohio 1975), design error was not the sole cause of the loss. The loss in *Essex House* resulted from temperature differentials coupled with negligence in design and construction of the building. In the absence of the particular weather conditions which caused the temperature differentials, the loss within the policy period was not inevitable or certain. The temperature differentials which existed in *Essex House* were the necessary intervening fortuitous circumstances required in order for liability to attach, which is not the factual situation presented in the instant case.

In *N. Ren Corporation v. American Home Assurance Co.,* 619 F.2d 784 (8th Cir.1980), the defective design of an item of equipment caused a loss, but only as the result of the intervention of an external and unanticipated event. There a refractory lining, which was properly designed, collapsed and caused damage to a defectively designed item of equipment. Such a sequence of events was "fortuitous" in that case, but that is not the situation presented here where there is not an extraneous or fortuitous event to transform the loss into a risk. The loss here is caused by the inherent deficiencies in the design of the Bucket Wheel, said loss was certain and inevitable, no extraneous force intervened to cause the damage, and there was no fortuitous event.

The facts of the instant case more closely resemble *Greene v. Cheetham,* 293 F.2d 933 (2d Cir.1961), wherein a shipment of fish spoiled. The *Greene* Court stated that it would be unreasonable for the insurance company to pay for the damage actually caused prior to coverage or uncontemplated loss or damage caused from deteriorating agents present within the goods when the goods were shipped. If this were the case, the *Greene* Court reasoned, then the insurer would be a guarantee of the good quality of the fish when packed by the shipper, which liability the insurer did not assume under the terms and conditions of the contract of insurance. This reasoning is equally appropriate here, for we do not believe that the Defendant INA intended under the terms of the contract of insurance to guarantee that Bucket Wheel No. 3 was free of design defects. A sudden and fortuitous event did not occur here, and no extraneous forces intervened to cause the damage. Rather, the damage was certain and inevitable and resulted from within the Bucket Wheel itself, not from without.

Finally, the present case is also distinguishable from the factual situation presented in *Texas Eastern Corporation v. Marine Office—Appleton & Cox Corp.,* 579 F.2d 561 (10th Cir.1978). There the Court stated, 579 F.2d at 565: "When past experience indicated that this particular design would be satisfactory, and it was not for some reason which is uncertain, a *fortuitous* event occurred within the loss provisions of the contract, not excluded by the 'deficiency in design' clause." (Emphasis Supplied). The situation in the instant case is different, since unlike the underground storage caverns in *Texas Eastern,* the Bucket Wheel was inadequately designed from its inception, and its failure was certain from the very beginning of its operation.

This Court has previously addressed these very same issues of fortuity in two companion cases, *Compagnie Des Bauxites*

*De Guinee v. Insurance Company of North America, et al.,* 554 F.Supp. 1080 (D.C.1983); and *Compagnie Des Bauxites De Guinee v. L'Union Atlantique, et al.,* 555 F.Supp. 1027 (D.C.1983). In those Opinions, although this Court based its decision on the lack of a fortuitous event, public policy considerations, which are also relevant here, were discussed. A non-fortuitous loss, or a loss due to an inherent vice, defect or infirmity, is not covered by a contract of insurance, regardless as to the bargained-for exclusionary terms of the policy, for insurance policies are designed to cover risks, and implicit in the concept of risk is chance and uncertainty. If it is inevitable that a loss will occur, whether by the insured's own misconduct *or* by the inherent nature and qualities of the object of insurance, there is no risk, and it is contrary to public policy to insure against that inevitable loss. To allow recovery in a case where the loss is inevitable prior to the issuance of the policy of insurance is an open invitation to fraud.

## IV. *Conclusions*

Plaintiff CBG has taken the position that Defendant INA has waived the defense of the lack of a fortuitous event. Defendant INA contends that it clearly gave CBG notice of its defense in this regard, but in the event that it has not, seeks leave to amend its Answer to include the same.

Defendant INA's Fourth Defense avers that "the said policy provides only for coverage for loss from business interruption caused by damage to real or personal property occurring during the terms of the policy and after the inception date thereof as more fully set out in the said policy, the terms of which are incorporated herein." In its Fifth Defense, Defendant specifically pleaded that the primary and original damage to the Bucket Wheel occurred prior to the effective date of the policy. Defendant INA's Fourth and Fifth Defenses do not specifically refer to the concept of fortuity, however, this issue of fortuity goes to the issue of whether coverage under the policy exists. Defendant INA has clearly denied coverage under the policy of insurance as a part of their Original Answer. This Court does not construe Defendant INA's failure to plead specifically the lack of a fortuitous event to be a waiver of that defense. Defendant INA has consistently denied coverage in the instant case on the ground that the cause of the damage existed prior to the inception of the policy coverage. In this respect Defendant INA has not misled plaintiff CBG in any manner.

Even if an unpled defense is raised on a Rule 56(b) motion for summary judgment, it is proper for the Court to consider that motion, and the Court has the power to permit a formal amendment setting forth that defense. *See generally* 6 *Moore's Federal Practice* ¶ 56.11[3]. Although this Court believes that Defendant INA's Answer sufficiently sets forth the basis of their defenses, nevertheless, the Court will permit the filing of Defendant's Amended Answer. Such an amendment is consistent with this Court's liberal policies of amendment, extensions of time, and scrupulous fairness to all parties involved in all of this bauxite litigation.

For the reasons set forth hereinabove in this Opinion, Defendant's Motion For Leave to File an Amended Answer will be granted, and Defendant's Motion for Summary Judgment will likewise be granted. An appropriate Order will be entered.