**ADAMS–ARAPAHOE JOINT SCHOOL DISTRICT NO. 28–J,
Plaintiff–Appellee, Cross–Appellant,**

v.

**The CONTINENTAL INSURANCE COMPANY, a corporation, Defendant–Appellant, Cross–Appellee.**

Nos. 87–1678, 87–1740.

United States Court of Appeals,
Tenth Circuit.

Dec. 11, 1989.

Wiley E. Mayne (Curt Krechevsky, with him on the briefs), Holland & Hart, Denver, Colo., for plaintiff-appellee, cross-appellant.

Otto F. Becker, Thornton, Taylor & Downs, San Francisco, Cal. (Stephen E. Connor, Wood, Ris & Hames, Denver, Colo., with him on the briefs), for defendant-appellant, cross-appellee.

Before LOGAN, HENLEY * and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant-appellant The Continental Insurance Company ("Continental") appeals from a judgment holding it liable under an insurance policy issued to plaintiff-appellee Adams–Arapahoe Joint School District No. 28–J ("Adams–Arapahoe" or "the District") for expenses incurred after the partial collapse of the roof of Gateway High School in Aurora, Colorado.[1] We affirm the trial court's decision that the loss, if fortuitous, was covered. We reverse the judgment entered on the jury's verdict that the loss was fortuitous, and remand for a new trial on that issue, because of a prejudicially erroneous instruction.

## I. BACKGROUND

The construction of Gateway High School took place from 1972 to 1974, with the roof put up during the winter of 1972–73. R.Vol. II at 6. The original plan called for galvanized steel sheets to be placed over the roof beams, then overspread with lightweight concrete and covered with asphalt and gravel. R.Vol. II at 40. During the construction, however, the general contractor received permission to use gypsum-based concrete instead, because the material originally chosen would not cure properly in cold weather. R.Vol. VI at 8.

The roofing subcontractor discussed the proposed change with the concrete manufacturer, who said that some corrosion had been experienced when the gypsum-based concrete was applied to metal decking. R.Vol. IV at 225; Attachment to Opening Brief of Appellant at 16. The subcontractor notified the general contractor, who in turn informed the project's architect. R.Vol. IV at 235–36. After a meeting with the contractors and a District representative, the architect decided to proceed with the change. R.Vol. VI at 11. It is not clear whether the corrosion danger was discussed at this meeting. At the trial, representatives of the District denied ever having been informed of any increased risk. R.Vol. IV at, *e.g.*, 194–95, 201–02.

Continental issued an all-risk insurance policy for the school, effective September 1, 1982. The policy covered "all . . . risks of direct physical loss," but excluded any loss caused

"[b]y wear and tear, deterioration, *rust or corrosion*, mould, wet or dry rot; *inherent or latent defect;* . . . *unless such*

---

* Honorable J. Smith Henley, Senior Judge, United States Court of Appeals, Eighth Circuit, sitting by designation.

1. During the pendency of this appeal, both parties made motions to file supplemental briefs. Both motions were granted, and both supplemental briefs were received and considered.

*loss results from a peril not excluded in this policy.* If loss by a peril not excluded in this policy ensues, then this Company shall be liable for only such ensuing loss."

Attachment to Opening Brief of Appellant at 75 (emphasis added).

On April 23, 1984, a small portion (six to twelve square feet) of the roof collapsed. R.Vol. II at 9. An inspection revealed extensive corrosion throughout that portion of the roof which had been filled with gypsum-based concrete, making continued occupation of the building unsafe. R.Vol. II at 15, 39. Adams–Arapahoe spent about $8.8 million to remove and replace eighty thousand square feet of roofing (approximately forty percent of the total area).

After Continental denied the District's claim, Adams–Arapahoe filed suit in state court. The action was removed to the United States District Court for the District of Colorado. The trial court granted plaintiff's motion for partial summary judgment, holding that (1) defective design and/or construction was a risk covered by the policy, and was the cause of the District's loss, (2) the corrosion exclusion did not preclude coverage, and (3) the District's loss included the entire corroded area of the roof.

A jury trial was held on the remaining issues. Continental argued at trial that the District expected the loss, rendering it nonfortuitous (and therefore not covered). The jury was instructed that the District bore the burden of showing fortuitousness, but that Continental bore the burden of proof on its affirmative defense of the District's expectation, or knowledge of a substantial risk, of collapse. A verdict was returned in favor of the District for $8,674,-778.

## II. DISCUSSION

The substantive law of Colorado governs our decision in this diversity case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1934); *Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d 885, 888 (10th Cir.1980). With respect to issues which the Colorado Supreme Court has not addressed, we may consider all available resources, including Colorado appellate court decisions, other state and federal decisions, and the general trend of authority, to determine how the Colorado Supreme Court would construe the law in this case. *Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d at 888; *City of Aurora, Colo. v. Bechtel Corp.,* 599 F.2d 382, 386 (10th Cir.1979).

### A. Partial Summary Judgment

The trial court interpreted the policy to cover the loss in question, if the loss was fortuitous. The construction of an insurance policy is a matter of law. *Marez v. Dairyland Ins. Co.,* 638 P.2d 286, 288–89 (Colo.1982). The language of the policy is interpreted according to its common usage, with ambiguities construed against the insurer. *Reed v. United States Fid. & Guar. Co.,* 176 Colo. 568, 491 P.2d 1377, 1379 (1971).

1. Whether defective design and/or construction was a covered risk.

An all-risk insurance policy covers any fortuitous loss not resulting from an excluded risk or from fraud by the insured. *Kane v. Royal Ins. Co. of Am.,* 768 P.2d 678, 679 n. 1 (Colo.1989); *Steamboat Dev. Corp. v. Bacjac Indus., Inc.,* 701 P.2d 127, 128 (Colo.Ct.App.1985); 13A G. Couch, *Cyclopedia of Insurance Law* § 48:141 (2d rev. ed. 1982). Continental contends, however, that defective design and/or construction is not a risk at all; it is merely a condition of the insured property.

In *Wolfe v. LeVasseur–Hinson Construction Co.,* 147 So.2d 747 (La.Ct.App. 1962), the floors of a house were negligently installed prior to the purchase of an all-risk policy. Later, the floors buckled. The court denied coverage because the acts which caused the loss occurred before the coverage began. *Id.* at 750; *accord 80 Broad St. Co. v. United States Fire Ins. Co.,* 88 Misc.2d 706, 389 N.Y.S.2d 214, 215 (Sup.Ct.1975), *aff'd per curiam,* 54 A.D.2d 888, 390 N.Y.S.2d 768 (1976).

Yet, most of the decisions addressing this question hold that defective design and/or construction *is* a risk of physical peril, even if it predates the policy. *See, e.g., Texas E. Transmission Corp. v. Marine Office—Appleton & Cox Corp.,* 579 F.2d 561, 564–66 (10th Cir.1978); *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F.Supp. 978, 992–93 (S.D.Ohio 1975); *Garvey v. State Farm Fire & Cas. Co.,* 770 P.2d 704, 711 (Cal.1989). *See generally* Annotation, *Property Damage Resulting from Inadequate or Improper Design or Construction of Dwelling as Within Coverage of "All Risks" Homeowner's Insurance Policy,* 41 A.L.R. 4th 1095 (1985). We agree with the trial court's decision that the Colorado Supreme Court would hold that a loss so caused is covered by an all-risk policy.

Still, an all-risk policy does not cover losses which were not fortuitous. *Texas E. Transmission Corp. v. Marine Office—Appleton & Cox Corp.,* 579 F.2d 561 at 564; *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F.Supp. at 987. While this implied requirement of fortuitousness is universally recognized, Annotation, *Coverage Under "All Risks" Insurance,* 88 A.L.R.2d 1122, 1126 (1963), there is some disagreement regarding just what is or is not fortuitous.

One group of cases holds that a loss is not fortuitous if it was inevitable when the policy was issued. *See, e.g., Greene v. Cheetham,* 293 F.2d 933, 937 (2d Cir.1961); *Glassner v. Detroit Fire & Marine Ins. Co.,* 23 Wis.2d 532, 127 N.W.2d 761, 764 (1964). Under this rule, a loss caused by defective design and/or construction which preceded the issuance of the policy is not fortuitous. *Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am.,* 566 F.Supp. 258 (W.D.Pa.1983), *rev'd without opinion,* 735 F.2d 1348 (3d Cir.1984). Obviously, the conclusion that a loss was inevitable at the time of contracting, and therefore non-fortuitous, often involves the use of hindsight.

A more recent line of decisions rejects the use of hindsight and holds that a loss caused by a pre-existing defect is fortui-tous so long as neither party knew of the defect or expected the loss. *See, e.g., Standard Structural Steel Co. v. Bethlehem Steel Corp.,* 597 F.Supp. 164, 192 (D.Conn.1984); *Fidelity & Guar. Ins. Underwriters, Inc. v. Allied Realty Co.,* 238 Va. 458, 384 S.E.2d 613, 615 (1989).

"A fortuitous event ... is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; *it may even be a past event, ... provided that the fact is unknown to the parties.*"

*Texas E. Transmission Corp. v. Marine Office—Appleton & Cox Corp.,* 579 F.2d at 564 (quoting *Restatement of Contracts* § 291 comment a (1932)) (emphasis added). Under this view, defective design and/or construction, even if it exists before the policy is issued, can cause a fortuitous loss. *Compagnie des Bauxites de Guinee v. Insurance Co. of N. Am.,* 724 F.2d 369, 373 (3d Cir.1983); *Kilroy Indus. v. United Pac. Ins. Co.,* 608 F.Supp. 847, 857–58 (C.D.Cal. 1985); *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F.Supp. at 992–93. These decisions represent the clear trend of authority, and we believe that the Colorado Supreme Court would choose to follow them.

Continental contends that even if a loss due to defective design and/or construction is a covered risk, coverage of the District's loss is barred by the exclusion for loss by "inherent or latent defect." Prior to considering this argument, we must decide whether or not it is properly before us. Adams–Arapahoe contends that Continental abandoned this issue on appeal. In fact, though, the issue was not raised and ruled upon in the trial court, so it never existed to be abandoned.

■ Continental's references to the latent defect exclusion before the district court were infrequent and nonspecific. In its answer, Continental raised as an affirmative defense

"one or more of the following provisions ...: loss by wear and tear, deterioration,

rust or corrision [sic], wet rot, inherent or latent defect, settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings."

Answer, R. Vol. I at Tab 3, p. 3. Its brief in opposition to Adams–Arapahoe's motion for summary judgment repeats this list, and also states that, because "the eventual collapse of the roof was due to no casualty or risk other than the inherent deficiency within the design of the roof itself," the loss was not fortuitous. Memorandum Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, R. Vol. I at Tab 6, pp. 6, 9. Continental made no other references to the latent defect exclusion. A matter not pursued before the trial court, such as this one, is "inappropriate for consideration on appeal." *Stephens Ind., Inc. v. Haskins & Sells*, 438 F.2d 357, 361 (10th Cir.1971).

■ Even if the latent defect exclusion had been raised below, it was not preserved as an issue on appeal. The only exclusion which appears in the statements of issues in Continental's docketing statement and opening brief before this court is the corrosion exclusion. An issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal. *Bledsoe v. Garcia*, 742 F.2d 1237, 1244 (10th Cir.1984). Proper appellate advocacy requires early identification of the issues. *Braley v. Campbell*, 832 F.2d 1504, 1508 & n. 2 (10th Cir.1987). Merely mentioning inherent defects in another context is not enough.

We will not consider the issue.

2. Whether the corrosion exclusion applies.

a. "corrosion"

Continental contends that the policy excludes from coverage any loss due to corrosion. The District argues that the word "corrosion" refers only to normal or natural corrosion.

*Kane v. Royal Insurance Co.*, 768 P.2d 678 (Colo.1989), addressed the question of whether damage caused when a man-made dam failed was covered under a policy which excluded loss caused by "flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water, or spray from any of the foregoing." *Id.* at 680. The court decided that the common meaning of the word "flood" included both natural and artificial overflowings of water. *Id.* at 681; *accord Bartlett v. Continental Divide Ins. Co.*, 697 P.2d 412, 413 (Colo.Ct.App.1984), *aff'd by an evenly divided court*, 730 P.2d 308 (Colo.1986); *see also Haines v. United Sec. Ins. Co.*, 43 Colo.App. 276, 602 P.2d 901, 902 (1979). The court focused on the particular exclusion at issue ("flood"), rather than considering it in the context of the other exclusions.

■ Our inquiry, then, is whether the common meaning of "corrosion" includes all corrosion or only naturally occurring corrosion. One source of the plain meaning of a term is the dictionary. *See Kane v. Royal Ins. Co.*, 768 P.2d at 680–81; *United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490, 493 (10th Cir.1976) (applying Colorado law). Definitions such as "eating away," "wearing away," and "alteration," *Webster's Third New International Dictionary* 512 (1981); *Funk & Wagnalls Standard Desk Dictionary* 144 (1977), make no distinction between corrosion occurring over the natural course of a building's life and corrosion produced by defective design and/or construction.

Other decisions construing similar exclusions confirm this construction. *Arkwright–Boston Manufacturers Mutual Insurance Co. v. Wausau Paper Mills Co.*, 818 F.2d 591 (7th Cir.1987), dealt with a similar corrosion exclusion. After equipment was damaged by acid produced during the recovery of paper by-products, the insured argued that the corrosion exclusion did not apply because the damage occurred suddenly rather than gradually. The court rejected this argument, holding that the exclusion applied to sudden corrosion as much as to any other corrosion. *Id.* at 594–95; *accord Twin City Hide v. Transamerica Ins. Co.*, 358 N.W.2d 90, 92 (Minn. Ct.App.1984); *see also Resorts Int'l, Inc. v.*

*American Home Assurance Co.,* 311 So.2d 806, 807 (Fla.Dist.Ct.App.1975) (per curiam).[2] *But see Cyclops Corp. v. Home Ins. Co.,* 352 F.Supp. 931, 936 (W.D.Pa. 1973).

We conclude that under Colorado law the word "corrosion" unambiguously refers to all corrosion, however brought about.

### b. "unless such loss results from a peril not excluded in this policy"

Under the policy, coverage of a loss due to an excluded cause is excluded "unless such loss results from a peril not excluded in this policy" [hereinafter "the 'unless' clause"]. The trial court held that, because the corrosion in this case resulted from a covered risk (defective design and/or construction), the exclusion did not apply.

The only published decision construing such a clause [3] is *Adrian Associates v. National Surety Corp.,* 638 S.W.2d 138 (Tex.Civ.App.1982), *aff'd per curiam,* 650 S.W.2d 67 (Tex.1983). In that case, water under the surface of the ground, produced by a ruptured water main, caused the subsidence of an insured building. The all-risk policy excluded loss or damage resulting from subsidence, but the exclusion had an "unless" clause identical to the one here at issue. The court held that because the subsidence resulted from subterranean water, a non-excluded cause, the "unless" clause negated the subsidence exclusion. *Id.* at 141.

Like the district court, we see no other reasonable construction of the clause. Contrary to Continental's fears, this interpretation of the "unless" clause does not render the entire exclusion nugatory. Rather, the policy still excludes losses due to corrosion with no identifiable non-excluded cause. In effect, the corrosion exclusion applies only to naturally occurring corrosion.

Accordingly, we affirm the trial court's decision that the District's loss, if fortuitous, was covered.[4]

### 3. Whether the District's loss included the entire corroded area, or just that portion of the roof which actually collapsed.

Continental contends that the only loss Adams–Arapahoe suffered was the collapse of a small portion of the roof. The trial court, relying upon *Western Fire Insurance Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P.2d 52 (1968), ruled that the District's loss included the entire corroded area, because the corrosion made the school unsafe and unusable. In *First Presbyterian Church,* a church was rendered uninhabitable by the accumulation of gasoline around and under the building. Even though there was no physical damage, the Colorado Supreme Court held that the loss of use resulting from the infiltration was a physical loss. *Western Fire Ins. Co. v. First Presbyterian Church,* 437 P.2d at 55 (citing *Hughes v. Potomac Ins. Co.,* 199 Cal.App.2d 239, 18 Cal.Rptr. 650 (1962)

**2.** Similarly, in *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 694–95, 377 P.2d 889, 894–95 (1963), the ground under an insured home subsided following the rupture of a sewer line. The court deemed irrelevant the fact that the subsidence was brought about unnaturally, and held that the exclusion of damage caused by "settling" would apply. *Accord, e.g., General Ins. Co. of Am. v. Hallmark,* 575 S.W.2d 134, 136 (Tex.Civ.App.1978) (following *Lambros v. Standard Fire Ins. Co.,* 530 S.W.2d 138 (Tex.Civ.App. 1975); *Bentley v. National Standard Ins. Co.,* 507 S.W.2d 652 (Tex.Civ.App.1974)). *But see New Hampshire Ins. Co. v. Robertson,* 352 So.2d 1307, 1310 (Miss.1977).

**3.** Continental cites a number of decisions, such as *Aetna Casualty & Surety Co. v. Yates,* 344 F.2d 939 (5th Cir.1965), which construe ensuing

loss provisions. The "unless" clause is not the policy's ensuing loss provision; the sentence following the "unless" clause is the ensuing loss provision. Continental's authority is inapposite.

**4.** Because we have decided that defective design and/or construction was a covered risk, and that the corrosion which occurred was not an excluded risk, we need not consider the question of which of these risks actually caused the loss. There is no cause to consider the parties' discussion of the last section of *Kane v. Royal Insurance Co. of America,* 768 P.2d at 684–86, and other cases, such as *Garvey v. State Farm Fire & Casualty Co.,* 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989), because the causation analysis is unnecessary if both risks are covered.

**778**

(landslide did not damage house, but left it perched precariously over a cliff; the uninhabitability of the house was held to be a loss)); *see also Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 787 F.2d 349, 352 (8th Cir.1986); *Gibson v. Secretary of HUD,* 479 F.Supp. 3, 5 (M.D.Pa.1978); *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F.Supp. at 994. *First Presbyterian Church* controls the decision in this case. The trial court's ruling was correct.

*B.  Jury Instructions*

■ The trial court granted partial summary judgment on the issue of whether the loss, if fortuitous, was covered, but reserved the fortuitousness question for the jury. The jury received the following instructions:

"The District has the burden of proving by a preponderance of the evidence that ... a fortuitous loss took place.... *Continental has the burden of proving by a preponderance of the evidence its affirmative defense that the District had knowledge, either actual or imputed, before it obtained its insurance policy, that a substantial risk already existed that the roof deck would collapse because of corrosion.*"

R. Vol. V at 326–27 (emphasis added). The substance of the jury instructions in a diversity case is a matter of state law, but the question of whether an error is harmless is one of federal law. *Brownlow v. Aman,* 740 F.2d 1476, 1490 (10th Cir.1984).

An insurer bears the burden of proving an affirmative defense which will enable it to avoid a policy. *Commercial Ins. Co. v. Smith,* 417 F.2d 1330, 1336 (10th Cir.1969) (citing *Olinger Mut. Ben. Ass'n v. Christy,* 139 Colo. 425, 342 P.2d 1000 (1959)). If,

however, Continental's claim of the District's knowledge was not an affirmative defense, but was interposed only to prevent the District from meeting its burden of proving fortuitousness, then Continental did not bear the burden of proof on the knowledge issue. *Lockwood v. Travelers Ins. Co.,* 179 Colo. 103, 498 P.2d 947, 950 (1972) (where plaintiff had the burden of proving that insured's death was accidental, it was erroneous to place on the insurer the burden of proving its rebuttal argument that the death was a suicide).

■ In its answer, Continental stated that the District's loss was "not the result of a fortuitous event," Answer, R. Vol. I at Tab 3, p. 3, but did not make any reference to the District's alleged knowledge. The pretrial order is similar. *See* Pretrial Order, April 11, 1986, R. Vol. I at Tab 5, p. 2.[5] We feel that Continental did not plead Adams–Arapahoe's alleged knowledge of the increased risk of corrosion as an affirmative defense. The argument was raised merely to rebut the District's claim that the loss was fortuitous. The affirmative defense instruction should not have been given. Even if Continental were asserting the District's knowledge both as an affirmative defense and as a rebuttal, the instruction, without further delineation, would have been erroneous. *Britt v. Travelers Ins. Co.,* 556 F.2d 336 (5th Cir.1977), *modified,* 566 F.2d 1020, 1022–23 (5th Cir. 1978).

We will not reverse the judgment unless the error prejudiced Continental. *Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1310 (10th Cir.), *cert. denied,* 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986). We must decide, then, whether the fortuitousness instruction, which was correct, rendered

---

**5.** The District's first motion in limine, to which Continental did not object, stated that "Continental has raised as *a defense* to coverage" that the District knew or suspected, when it obtained the insurance policy, that the roof deck would collapse because of corrosion. R. Vol. III at 9–10; Plaintiff's First Motion In Limine, R. Vol. I at Tab 11, p. 2 (emphasis added). The District contends that Continental's failure to object to either the motion or the making of such introductory remarks to the jury precludes Continental from now appealing the issue. We disagree.

The statement is ambiguous. Stating that Continental has raised the issue as "a defense" is not the same as stating that it is an affirmative defense upon which Continental bears the burden of proof.

Besides, Continental made a specific objection to the affirmative defense instruction. *See* R.Vol. V at 304–306. Nothing more is necessary to preserve the right to appeal the instruction. *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1390 (10th Cir.1987).

harmless the improper affirmative defense instruction.

In *Britt v. Travelers Insurance Co.*, the life insurance policy on plaintiff's husband paid double indemnity for an accidental death, and had an exclusion for death caused by a mental or physical infirmity. Decedent died under circumstances which may have been accidental, and may have been caused by a mental or physical infirmity. The insurer raised decedent's infirmities both to contest plaintiff's claim that the death was accidental, and to show that the infirmity exclusion applied. The insurer bore the burden of proof on the second issue, but not on the first.

The jury instruction correctly allocated the burden of proof regarding whether the death was accidental, but then stated that the insurer bore the burden of proving a mental or physical infirmity, without distinguishing between the two ways the insurer was using that argument. This was held to be a prejudicial error. *Britt v. Travelers Ins. Co.*, 566 F.2d at 1022–23 & n. 3.

The trial court in *Britt*, by failing to distinguish between a rebuttal and an affirmative defense, shifted part of the plaintiff's burden of proving that the death was accidental onto the defendant. The affirmative defense instruction in the instant case had the same effect. In both cases, the error was prejudicial.

We realize that jury instructions are to be reviewed as a whole, and that " 'only in those cases where the reviewing court has a substantial doubt whether the jury was fairly guided in its deliberations should the judgment be disturbed.' " *Lutz v. Weld County School Dist. No. 6*, 784 F.2d 340, 341 (10th Cir.1986) (quoting *Mid–Texas Communications v. American Tel. & Tel. Co.*, 615 F.2d 1372, 1390 n. 16 (5th Cir.), *cert. denied*, 449 U.S. 912, 101 S.Ct. 286, 66 L.Ed.2d 140 (1980) (citations omitted)).

Still, the chance that the jury was misled is too great for us to assume that the fortuitousness instruction undid the harm done by the affirmative defense instruction. *See Great W. Sugar Co. v. Mrs. Alison's Cookie Co.*, 749 F.2d 516, 522 (8th Cir.1984); *see also Campbell v. Otis Elevator Co.*, 808 F.2d 429, 433 (5th Cir.1987).

This case differs from *Fox v. Ford Motor Co.*, 575 F.2d 774 (10th Cir.1978). In that case, the trial court correctly instructed the jury on the standard by which to determine if the defendant was negligent, but then gave an instruction on the implied warranty of merchantability which imposed absolute liability for defects. The applicable state law required negligence to violate the warranty.

On appeal from a verdict for the plaintiff, the warranty instruction was found to be erroneous, but not prejudicial. The error was harmless because the trial court had not treated negligence and warranty as separate issues: "It blended both of these in with the *extensive* charge on negligence and reasonableness." *Id.* at 786 (emphasis added). Because of this blending, "the jury very probably gave effect to the negligence charge ... since there was no statement by the court that the warranty was a separate basis for recovery." *Id.* Unlike in *Fox*, we have no reason in this case to believe that the jury did not give effect to the improper instruction.

Finally, the District argues that the error was harmless because the evidence would not have supported any other verdict. However, there was enough evidence of the District's knowledge to support a verdict by a properly instructed jury that the loss was not fortuitous.[6] Therefore, " 'the jury *might* have based its verdict' " on the erroneously given instruction. *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294, 1300 (10th Cir.1989) (quoting *McMurray v. Deere &*

6. The exhibits included a letter from the roofing subcontractor to the general contractor that the manufacturer of the gypsum-based concrete had withdrawn its recommendation of the material as roof fill because of problems with corrosion. R. Vol. IV at 225; Attachment to Opening Brief of Appellant at 16. There was evidence that this letter was forwarded to the project architect, R. Vol. IV at 235–36; Attachment to Opening Brief of Appellant at 19, and that such issues would be discussed among the architect, the general contractor, and a representative of the District. R. Vol. VI at 11. The jury could conclude that the District had either direct or imputed knowledge of an abnormal risk of corrosion.

*Co.,* 858 F.2d 1436, 1444 (10th Cir.1988) (emphasis added)). Even if that possibility is "very unlikely," reversal is required. *Farrell v. Klein Tools, Inc.,* 866 F.2d at 1301.

## C. *Other issues*

■ Adams–Arapahoe filed a cross-appeal in this matter, challenging the trial court's application of the federal post-judgment interest rate, pursuant to 28 U.S.C. § 1961, instead of the state post-judgment interest rate. Since then, this court decided in *Everaard v. Hartford Accident & Indemnity Co.,* 842 F.2d 1186, 1193–94 (10th Cir.1988), that the federal rate applies, even in diversity actions. The trial court applied the correct rate.

■ The District also challenged our jurisdiction, because Continental filed this appeal more than thirty days after judgment was entered (but within thirty days of the resolution of plaintiff's motion for pre-judgment interest). This argument subsequently was foreclosed by the Supreme Court's holding in *Osterneck v. Ernst & Whinney,* — U.S. ——, 109 S.Ct. 987, 991, 103 L.Ed.2d 146 (1989), that a motion for pre-judgment interest is a Rule 59(e) motion to alter or amend the judgment. Continental's notice of appeal was timely.

## III. CONCLUSION

The trial court correctly granted partial summary judgment in favor of the School District. If fortuitous, the loss (which included the entire corroded area) was insured against because defective design and/or construction was a covered risk, and the corrosion exclusion did not operate to exclude corrosion brought about by a covered risk. The judgment against Continental must be reversed and remanded, however, because the jury instructions erroneously and prejudicially shifted part of the District's burden of proving fortuitousness.

The judgment is AFFIRMED in part, and REVERSED and REMANDED in part for

a new trial limited to the question of whether or not the loss was fortuitous.