**CENTENNIAL MANAGEMENT SER-VICES, INC., Plaintiff/Counter-claim Defendant,**

v.

**AXA RE VIE, Axa Re Life Insurance Company and Axa Reassurance, De-fendants/Third–Party Plaintiffs,**

v.

**Centennial Financial Group, Inc., William E. Vogel, Thomas L. Enstrom, Jardine Group Services Corporation and James A. Irwin, Third–Party Defendants.**

No. 97–2509–JWL.

United States District Court, D. Kansas.

Aug. 14, 2000.

Douglas J. Schmidt, Blackwell, Sanders, Peper, Martin, LLP, Daniel M. Dibble, Thomas S. Stewart, Michael J. Abrams, Lathrop & Gage L.C., Kansas City, MO, for Centennial Management Services, Inc.

Frank Wendt, Michael E. Waldeck, Angela K. Green, Niewald, Waldeck & Brown, P.C., Kansas City, MO, Thomas M. Regan, Cozen and O'Connor, Philadelphia, PA, Steven J. Boyd, Badger & Levings, L.C., Kansas City, MO, Christopher B. Kende, Edward Hayum, Cozen & O'Connor, New York City, for Axa Re Vie, Axa Re Life Insurance Company, and Axa Reassurance.

Daniel M. Dibble, Thomas S. Stewart, Michael J. Abrams, Lathrop & Gage L.C., Kansas City, MO, for William E. Vogel and Thomas L. Enstrom.

Robert W. Cotter, Patrick M. Reidy, Dysart, Taylor, Lay, Cotter & McMonigle, P.C., Kansas City, MO, for Safe Passage International, LLC, James A. Irwin and Jardine Group Services Corporation.

Michael J. Abrams, Lathrop & Gage L.C., Kansas City, MO, for Centennial Financial Group, Inc.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Centennial Management Services, Inc. ("CMS"), the sole shareholder of Centennial Life Insurance Company ("CLIC"), a liquidated insurer, filed this action against CLIC's reinsurers, Axa Re Vie, Axa Reassurance, S.A. and Axa Re Life Insurance Company (collectively "Axa") alleging fraudulent misrepresentation and breach of contract in connection with various reinsurance agreements that Axa entered into with CLIC. In essence, CMS claims that Axa forced CLIC into liquidation. Axa, in turn, filed counterclaims against CMS for fraudulent misrepresentation, fraudulent omission and breach of contract in connection with the same reinsurance agreements.[1] According to Axa, CMS failed to disclose to Axa material information about CLIC's financial condition during the negotiations for the reinsurance agreements. Axa also filed a third-party complaint against the reinsurance brokers, James Irwin and Jardine Group Services Corporation, alleging fraudulent misrepresentation, fraudulent omission, negligent misrepresentation and breach of contract based on the brokers' purported failure to disclose material information about CLIC to Axa during contract negotiations. Finally, the reinsurance brokers filed a counterclaim against Axa alleging that Axa breached the brokerage agreement between the parties by failing to pay certain commissions to the brokers.

The case was tried to a jury over the course of four weeks. At the conclusion of the trial, the jury found in favor of CMS on its fraud claim against Axa, but awarded no damages to CMS.[2] Similarly, the jury found in favor of Axa on its fraud claims against CMS, CFG, Mr. Vogel and Mr. Enstrom, but awarded no damages to Axa.[3] The jury found in favor of Jardine and Mr. Irwin on all of Axa's claims and found in favor of Jardine on its breach of contract claim against Axa. On this claim, the jury awarded Jardine $162,363.00—the total amount of damages sought by Jardine.

This matter is presently before the court on various post-trial motions, including CMS, CFG, Mr. Vogel and Mr. Enstrom's motion for judgment as a matter of law and/or to alter or amend the judgment (doc. # 443); Axa's motion for judgment as a matter of law (doc. # 445); and Jardine's motion to award prejudgment interest (doc. # 447). In addition, Axa has filed various objections to Jardine and Mr. Irwin's bill of costs (doc. # 457). As set forth in more detail below, the mo-

1. Axa, as a third-party plaintiff, filed these same claims against Centennial Financial Group (CFG), William Vogel and Thomas Enstrom. CFG and Mr. Engstrom own CMS; Mr. Vogel owns CFG.

2. The jury found in favor of Axa on CMS's breach of contract claim.

3. Specifically, the jury found in favor of Axa on its fraudulent misrepresentation claim against CMS; its fraudulent misrepresentation and fraudulent omission claims against CFG; its fraudulent omission claim against William Vogel; and its fraudulent misrepresentation claim against Thomas Enstrom.

tions for judgment as a matter of law and the motion for prejudgment interest are denied. Axa's objections to Jardine and Mr. Irwin's bill of costs are sustained.

## I. Motions for Judgment as a Matter of Law

In their motion for judgment as a matter of law,[4] CMS, CFG, Mr. Vogel and Mr. Enstrom contend that judgment must be entered in their favor on Axa's fraud claims because the jury's verdict is inconsistent with respect to those claims. The movants maintain that the verdict is inconsistent in that the jury found in favor of Axa on the fraud claims but awarded no damages, despite the court's instructions to the jury that Axa, in order to prevail on its fraud claims, must have suffered damages as a result of the fraudulent conduct. According to the movants, then, judgment must be entered in their favor because one of the essential elements of Axa's fraud claims—damages—does not exist. In response, Axa argues that the movants have waived this issue by failing to raise it before the jury was dismissed and, in any event, that the jury's verdict is not inconsistent. In the alternative, Axa moves for judgment as a matter of law on CMS's fraud claim, asserting that if the court enters judgment for CMS, CFG, Mr. Vogel and Mr. Enstrom on Axa's fraud claims, then the court must enter judgment for Axa on CMS's fraud claim for the same reason—that the jury awarded no damages on the fraud claim. For the reasons set forth below, both motions are denied.

■ As an initial matter, the court notes that CMS, CFG, Mr. Vogel and Mr. Enstrom have not waived this issue by failing to raise it before the jury was dismissed. Although a party waives its right to challenge an inconsistent verdict based on a general jury verdict under Federal Rule of Civil Procedure 49(b) if not timely raised, this rule does not apply to special verdicts under Federal Rule of Civil Procedure 49(a). *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 851 (10th Cir.2000). A party challenging

an inconsistent verdict based on a special verdict "is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court." *Id.* at 851–52 (citations omitted). Because the jury here was provided with a special verdict form, the right to challenge the verdict as inconsistent has not been waived.

■ The court thus turns to the merits of CMS, CFG, Mr. Vogel and Mr. Enstrom's motion. Although Axa argues that the verdict is not inconsistent, the court need not reach this issue. Even assuming that the verdict is inconsistent, the parties' motions must be denied. Significantly, the parties seek relief only in the form of judgment as a matter of law. The Tenth Circuit has held that a district court may not enter judgment as a matter of law for one party based on an inconsistent verdict. *See id.* at 853–54. The only alternative is to order a new trial. *See id.* at 854. According to the Circuit, "it is impossible for [the] court to read the collective mind of the jury and determine why it answered the special verdict form in the way that it did." *See id.* at 853. The difficulty in granting judgment as a matter of law in this case is in determining whether the jury honestly and in good faith found that the Centennial parties had committed fraud and capriciously decided not to award damages, or honestly and in good faith found that Axa had suffered no damages and capriciously decided that the Centennial defendants had committed fraud. *See id.* at 853–54. Simply put, the court cannot intrude on the province of the jury. *See id.* at 854. Although a new trial might be appropriate if the jury's verdict is in fact inconsistent, neither the Centennial parties nor the Axa parties have requested a new trial and, thus, the court need not explore these issues any further. The motions for judgment as a matter of law are denied. *See Freeman v. Chicago Park Dist.*, 189 F.3d 613, 615 (7th Cir.1999) ("There is no priority of one answer over another when the verdicts are inconsistent. The proper remedy for inconsistent verdicts is a new trial.");

---

4. Although CMS, CFG, Mr. Vogel and Mr. Enstrom have captioned their motion as one "for judgment as a matter of law and/or to alter or amend the judgment," the body of the motion seeks relief under Rule 50(b) only.

*Danner v. International Med. Marketing, Inc.*, 944 F.2d 791, 794 (10th Cir.1991) (holding that trial judge should have granted new trial rather than judgment notwithstanding the verdict because the judge could not know in what order the jury reached its inconsistent verdicts); *Bonin v. Tour West, Inc.*, 896 F.2d 1260, 1263 (10th Cir.1990) (where inconsistencies in the verdict are apparent and irreconcilable, a new trial must be ordered); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* 2510 (2d ed.1995) ("If the jury's answers are inconsistent with each other even when the trial judge views them in the most generous way to avoid such a conclusion, a new trial under Rule 59(a) ordinarily is required.").

## II. Motion for Prejudgment Interest

■ Pursuant to Federal Rule of Civil Procedure 60(a), Jardine moves the court to "correct" the judgment entered on May 26, 2000 to include an award of prejudgment interest in favor of Jardine on its claim of breach of contract against Axa. According to Jardine's calculations, the amount of prejudgment interest due is $26,466.70. Although Axa does not dispute the amount of prejudgment interest which would be due, it maintains that Jardine's motion must be denied on procedural grounds. Specifically, Axa contends that "postjudgment motions to add prejudgment interest" may only be brought under Federal Rule of Civil Procedure 59(e) and, thus, must be brought within 10 days of the entry of judgment. Because Jardine's motion was filed more than 10 days after the entry of judgment, Axa asserts that its motion must be denied as untimely.

Axa's argument finds ample support in the case law. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)). Citing *Osterneck*, the Tenth Circuit has held that "the award of prejudgment interest, whether discretionary or mandatory, by a federal court, is an act

which serves to remedy the injury giving rise to the underlying action and in that sense is part of the merits of the court's decision." *See Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 813 (10th Cir.1993).[5] For that reason, the Circuit has held that a motion for prejudgment interest is properly construed as a Rule 59(e) motion to amend the judgment. *See id.* at 812–13; *accord Adams–Arapahoe Joint School Dist. No. 28–J v. Continental Ins. Co.*, 891 F.2d 772, 780 (10th Cir.1989) (a motion for prejudgment interest is a Rule 59(e) motion).

In response to Axa's argument, Jardine relies exclusively on the Tenth Circuit's decision in *McNickle v. Bankers Life & Casualty Co.*, 888 F.2d 678 (10th Cir.1989). According to Jardine, *McNickle* stands for the proposition that Rule 60(a) is the proper vehicle for a motion for prejudgment interest when the district court intended to award interest "as provided by law" and the pertinent law requires an award of prejudgment interest. In *McNickle*, the Tenth Circuit held that the plaintiffs' motion for prejudgment interest was properly brought under Rule 60(a) because the plaintiffs had requested prejudgment interest in their complaint and because judgment entered by the district court clearly contemplated an award of prejudgment interest. *See McNickle*, 888 F.2d at 681–82. The judgment entered by the district court awarded plaintiffs "$150,000 with interest thereon as provided by law." *See id.* at 679–80. Thus, according to the Circuit,

> "the plaintiffs essentially requested the court to insert the omitted particulars of the prejudgment interest award. This was neither an original post-judgment request for prejudgment interest nor a request that the amount due to them be changed in any way. Rule 60(a) specifically addresses the problem of omissions in judgments. If a court's judgment states that interest is to be "according to law" but the rate is not specified, the court may specify, in response to a Rule 60(a) motion, the appropriate rate at any time."

---

5. Although the *Osterneck* decision focused primarily on discretionary prejudgment interest, the court clearly indicated that the distinction between discretionary prejudgment interest and mandatory prejudgment interest was not relevant to its decision. *See Osterneck*, 489 U.S. at 176 n. 3, 109 S.Ct. 987.

*McNickle,* 888 F.2d at 682 (citations omitted). Unlike the plaintiffs in *McNickle,* however, Jardine did not request prejudgment interest in the pretrial order.[6] Thus, unlike the circumstances before the court in *McNickle,* Jardine's request is an original postjudgment request for prejudgment interest. Moreover, the court's judgment here, while it contemplated an award of postjudgment interest, did not contemplate an award of prejudgment interest. *See* Judgment at 3 (May 26, 2000) (entering judgment in favor of Jardine "in the amount of $162,363.00 with interest thereon at the rate of 6.197 percent as provided by law"). Accordingly, Jardine's motion, in accordance with the authorities set forth above, must be construed as a Rule 59(e) motion.

A motion brought pursuant to Rule 59(e) must be filed within 10 days after the entry of judgment. *See* Fed.R.Civ.P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."). This time limit is mandatory and the district court is prohibited from extending it. See Fed.R.Civ.P. 6(b); *Weitz v. Lovelace Health System, Inc.,* 214 F.3d 1175, 1179 (10th Cir.2000). Jardine's motion, filed nearly one month after the entry of judgment, is untimely and is therefore denied.

### III. Bill of Costs

In their bill of costs, Jardine and Mr. Irwin request the clerk to tax as costs, *inter alia,* counsel's travel expenses for the taking of depositions in the amount of $9280.84 and witness expenses in the amount of $6048.50. Axa objects to these specific requests,[7] arguing that travel expenses incurred in connection with the taking of depositions are not taxable as costs and that the requested costs for witness expenses exceed the amount provided by statute. *See* 28 U.S.C. § 1920 (no specific authorization for travel expenses of counsel) & § 1821(witness fees include $40.00

per diem, reasonable travel expenses, and a subsistence allowance for days when overnight stays are required).

■ Axa is correct that travel expenses of counsel is not specifically authorized by section 1920. Travel expenses incurred by a party's attorney to attend a deposition are generally not taxed as costs, *see Barrett v. United States,* No. 92–2362–JWL, 1994 WL 481777, at *3 (D.Kan. July 29, 1994), and judges in this district have consistently denied requests that travel expenses of counsel be taxed as costs. *See, e.g., Albertson v. IBP Inc.,* No. Civ.A. 96–2110–KHV, 1997 WL 613310, at *2 (D.Kan. Oct. 1, 1997); *Ortega v. IBP, Inc.,* 883 F.Supp. 558, 563 (D.Kan.1995); *Barrett,* 1994 WL 481777, at *3. Nonetheless, Jardine and Mr. Irwin maintain that travel expenses for their counsel should be taxable as costs here because of "extraordinary" or "compelling" circumstances. *See Savior v. City of Kansas City,* Civ. A. No. 90–2430–JWL, 1992 WL 370681, at *2 (D.Kan. Oct. 6, 1992) (travel expenses of attorneys incident to the taking of depositions are not taxable without a showing of extraordinary or compelling circumstances). According to Jardine and Mr. Irwin, the travel expenses they are seeking to have taxed as costs were incurred in connection with depositions in Paris—depositions which were scheduled in Paris (for the convenience of Axa's witnesses) before Jardine and Mr. Irwin were parties to the case. Jardine and Mr. Irwin contend that they should not have to "suffer financially" due to its late entry in the case and due to Axa's "reluctance to produce its employees for depositions in the United States." Such circumstances do not warrant an exception to the general rule. The general rule in the District of Kansas is that the depositions of out-of-state defendants or the agents of those defendants be taken in the place where the defendant or agent resides. Thus, even if Jardine or Mr. Irwin had formally objected to the taking of

---

6. For this reason alone, the court would likely deny Jardine's request for prejudgment interest. *See Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir.1997) (An order entered pursuant to Federal Rule of Civil Procedure 16(e) "supersedes the pleadings and controls the subsequent course of litigation."); *Hullman v. Board of Trustees of Pratt Community College,* 950 F.2d

665, 668 (10th Cir.1991) (issues not preserved in the pretrial order have been eliminated from the action).

7. Axa initially objected to various other requests as well but Jardine, upon reviewing Axa's objections, has voluntarily withdrawn those requests.

the depositions in Paris prior to the taking of those depositions, the court likely would have ordered that the depositions go forward in Paris. For the foregoing reasons, the court orders that the travel expenses of counsel for Jardine and Mr. Irwin, in the amount of $9,280.84, are not taxable as costs.

■ With respect to Jardine and Mr. Irwin's request that the clerk tax as costs certain witness expenses, the court looks to 28 U.S.C. § 1821. Section 1821 specifically provides that witnesses shall be paid an attendance fee of $40.00 per day for each day's attendance, as well as travel expenses and a subsistence allowance if an overnight stay is required.[8] In their bill of costs, Jardine and Mr. Irwin seek reimbursement of their share of expenses relating to two witnesses—Mr. Holt and Mr. Ganansia. According to Jardine, the parties agreed to split Mr. Holt's expenses "four ways" and Jardine's one-fourth share amounts to $298.50.[9] With respect to Mr. Ganansia, the parties apparently agreed to pay Mr. Ganansia a lump sum payment of approximately $23,000, split four ways, to compensate him for his travel, lodging, meals and time away from his business.[10] Jardine's share of Mr. Ganansia's expenses is $5750.00. There is no evidence in the record before the court, however, which could be used to determine the actual expenses incurred by Mr. Holt and Mr. Ganansia. For this reason, the court concludes that the only expenses that will be taxable as costs in connection with Mr. Holt and Mr. Ganansia is Jardine's one-fourth share of the $40.00 per diem fee for each witness. Because Mr. Ganansia's deposition lasted for two days, he is entitled to an $80.00 fee pursuant to section 1821. Jardine's share, then, would be $20.00. The record does not reflect the length of Mr. Holt's deposition, so the court will limit the award to one-fourth of the $40.00 per diem fee, or $10.00. In sum, Jardine's requests for witness expenses relating to Mssrs. Holt and Ganansia will be limited to a recovery of $30.00.

---

8. Axa objects to the witness expenses for Mssrs. Holt and Ganansia only to the extent they exceed the amount permitted by section 1821.

9. Mr. Holt lives in Florida, but apparently agreed to appear in Kansas City for his deposition upon

IT IS THEREFORE ORDERED BY THE COURT THAT CMS, CFG, Mr. Vogel and Mr. Enstrom's motion for judgment as a matter of law and/or to alter or amend the judgment (doc. # 443) is **denied**; Axa's motion for judgment as a matter of law (doc. # 445) is **denied**; and Jardine's motion to award prejudgment interest (doc. # 447) is **denied**. Axa's objections to Jardine and Mr. Irwin's bill of costs (doc. # 457) are **sustained**.

**IT IS SO ORDERED.**

agreement of counsel for all parties to reimburse Mr. Holt for his expenses.

10. Mr. Ganansia, who resides in Paris, agreed to travel to New York City for his deposition.