BAP Appeal No. 23-3    Docket No. 51    Filed: 01/23/2024    Page: 1

FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

January 23, 2024

Anne M. Zoltani
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE MOTIVA PERFORMANCE
ENGINEERING, LLC,

Debtor.

_____

PHILIP MONTOYA, as Chapter 7 Trustee
for Motiva Performance Engineering, LLC,

Plaintiff - Appellee,

DAVID ROCHAU, ARMAGEDDON
HIGH PERFORMANCE SOLUTIONS,
LLC, and AVATAR RECOVERIES, LLC,

Defendants - Appellees,

v.

WILLIAM S. FERGUSON,
DEALERBANK FINANCIAL
SERVICES, LTD., and ARMAGEDDON
TOOL & DIE, LTD.,

Defendants - Appellants.

_____

BAP No. NM-23-003

Bankr. No. 19-12539
Adv. No. 21-01026
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of New Mexico

_____

Before **ROMERO**, Chief Judge, **MICHAEL**, and **PARKER**, Bankruptcy Judges.

_____

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

_____

**PARKER**, Bankruptcy Judge.

Principles of equity underlie the entire bankruptcy process. Thus, it comes as no surprise that a bankruptcy court would invoke such principles in adjudicating a matter when a pattern of playing fast and loose with the truth manifests. After many years of gamesmanship to benefit financially, the appellants found themselves facing the consequences of their choices when a related debtor-entity filed bankruptcy. In an effort to right the ship, the chapter 7 trustee filed an adversary complaint against the appellants asserting claims for fraudulent transfer, breach of fiduciary duty, and veil piercing. Agreeing a free-for-all with the truth could not be sanctioned by the courts, the Bankruptcy Court invoked equitable principles that ultimately led to finding against the appellants. Finding no error in the Bankruptcy Court's decision, we affirm.

## I.    Background

### A.  Will Ferguson and His Business Dealings

Debtor Motiva Performance Engineering, LLC ("Motiva") is a limited liability company. Appellant William S. Ferguson is the majority owner of Motiva along with David Rochau and Scott Fox.[2] Mr. Ferguson is also the sole owner of Appellant Dealerbank Financial Services, Ltd. ("Dealerbank") and the owner of a controlling interest in Appellant Armageddon Tool & Die, Ltd. ("Armageddon"), Armageddon High

_____

[2] There are no company records supporting this ownership interest.

Performance Solutions ("Turbo"), and Avatar Recoveries, LLC ("Avatar").[3] In addition to his interests in these entities, Mr. Ferguson is an attorney in Albuquerque, New Mexico, with an affinity for cars.

Mr. Ferguson formed Motiva in 2007 to acquire and operate a "speed shop." Motiva provided high-level vehicle performance modifications and owned at least one car dealer license through which it sold cars on consignment. Mr. Ferguson used Motiva's dealer license to purchase the vehicles at issue in this case. Mr. Ferguson claims he paid for the vehicles personally or purchased them through Armageddon. In either instance, Mr. Ferguson used Motiva's dealer's license to purchase the vehicles, which eliminated any excise tax liability for Mr. Ferguson.[4] Mr. Ferguson stated in his brief, "Appellant Armageddon . . . operates as an investment 'clearinghouse' or 'bucket' for Mr. Ferguson's use."[5] While the record reflects Mr. Ferguson titled the vehicles in Motiva's name and listed them as Motiva's assets on Schedule C of his tax return, it is not clear from the record exactly who, or what entity, purchased each vehicle.

Who, of Motiva's three purported members, is the managing member also remains unclear. The evidence in the record is conflicting. Mr. Rochau asserted he was the managing member when he signed Motiva's chapter 11 bankruptcy petition in November

---

[3] The Court will refer to Armageddon collectively with Mr. Ferguson and Dealerbank as "Appellants."

[4] The record shows Mr. Ferguson personally bought at least twenty-three cars using Motiva's dealer license.

[5] Appellants' Opening Br. 3.

2019, but Mr. Ferguson represented he was the managing member in promissory notes executed just ten days prior to filing the petition. Despite the conflict, the record shows Mr. Ferguson represented he was the managing member at times convenient to him.

Mr. Ferguson's creditor relationship with Motiva is also subject to conflicting evidence. Motiva's books reflect Mr. Ferguson's investments were loans but he testified his investments were capital contributions. Thus, the record shows Mr. Ferguson also characterized his financial investments in Motiva in ways convenient to him.

In 2011, Mr. Rochau and Mr. Ferguson began a joint venture project researching and developing aftermarket turbo kits ("Turbo Kit Project"). According to Mr. Ferguson, he funded the initial investment for research and development; however, rather than directly funding the research, the financing flowed through Motiva's bank account and Mr. Ferguson claimed these expenses as Motiva expenses for tax purposes. No other entity had been formed for the project until 2017 when Mr. Ferguson and Mr. Rochau organized Turbo.[6] Turbo first appears on Schedule C in Mr. Ferguson's 2020 tax return.[7] Notably, all turbo kits continued to be sold on Motiva's premises.

B. *The Valles Litigation*

In 2016, Motiva filed a lawsuit against Andrea Valles for damaging one of the vehicles at issue—a 2012 Ferrari FF—in a car accident. The Ferrari was titled to Motiva.

---

[6] Turbo's articles of organization are not in the record, but the Bankruptcy Court noted the New Mexico Secretary of State website showed Mr. Ferguson was the sole manager and member at the time of organization. Opinion at 7, *in* Appellants' App. at 515.

[7] Opinion at 14, *in* Appellants' App. at 522.

Represented by Mr. Ferguson, Motiva asserted in the complaint: "[a]t all times relevant to the Complaint, Plaintiff owned and operated a 2012 Ferrari FF vehicle."[8] Through discovery, Motiva produced the certificate of title to the Ferrari as evidence of ownership.[9] Valles and her insurer ultimately settled the claim for $50,000, and the insurer issued the settlement funds to "Motiva Performance Engineering, LLC and William Ferguson Attorney."[10]

### C. The Butler Litigation and Bankruptcy

In 2014, Creig Butler hired Motiva to upgrade a 2009 Hummer. After several years and thousands of dollars spent, Butler sued Motiva in state court alleging the Hummer was unsafe to drive and good only for parts as a result of Motiva's work. The case went to trial in October 2018, and the jury returned a verdict against Motiva for $292,001 plus attorney's fees, costs, and post-judgment interest, resulting in a total judgment of $337,317.90. After the verdict, Mr. Ferguson and Mr. Rochau agreed to cease operating Motiva. Mr. Ferguson began transferring some of the vehicles, including the Ferrari, from Motiva to Dealerbank. Although purchase agreements exist in the record, there is no evidence money ever changed hands.

---

[8] *Complaint for Money Damages* at 1, ¶ 3, *in* Appellee's App. at 32.

[9] *Plaintiff's Responses to Defendants' First Set of Requests for Production of Documents and Things* at 2, *in* Appellee's App. at 35.

[10] *Court Findings of Fact and Conclusions of Law* at 14, *in* Appellee's App. at 152.

The next month, the state court issued a writ of execution directing the county sheriff to seize Motiva's assets, including the turbo kits on Motiva's premises. Mr. Ferguson interrupted the turbo kit seizure and asserted his company, Avatar, had a landlord's lien on the turbo kits. Mr. Butler then filed an application for a preliminary injunction freezing Motiva's assets, including the Ferrari and related insurance proceeds from the Valles settlement. The state court granted the injunction, but before the parties finalized the injunction terms, Mr. Ferguson caused Dealerbank to pledge the Ferrari as collateral for a $120,000 loan used to pay down Mr. Ferguson's personal line of credit.

Because of Mr. Ferguson's inconsistent treatment and claims about the Ferrari and turbo kits, Mr. Butler filed a motion in the state court action asking the court to declare Motiva owned the Ferrari and turbo kits. While the ownership issues were being litigated, Mr. Ferguson transferred more of the vehicles titled in Motiva's name to Dealerbank and other third parties. The state court held a hearing and, on October 28, 2019, entered an order concluding Motiva owned the Ferrari and the turbo kits.

On November 1, 2019, Motiva filed a petition for chapter 11 relief. Subsequently, Motiva filed a motion to sell the turbo kits in cooperation with Turbo, and an adversary proceeding against Appellants seeking turnover of the Ferrari, the remaining settlement proceeds, the value of the Turbo Kit Project, any remaining turbo kits, and any funds received from the sale of the turbo kits. Two days before the hearing on the motion to sell the turbo kits, Motiva agreed to convert the case to chapter 7, and Philip Montoya was assigned as the chapter 7 Trustee.

6

## D. *The State Courts' Sanctions*

When the state court learned Mr. Ferguson transferred the Ferrari to Dealerbank, encumbered it after the preliminary injunction hearing, and took inconsistent positions about the Ferrari and turbo kit ownership, it entered an order of civil contempt against Mr. Ferguson. Then, on June 10, 2021, the New Mexico Supreme Court censured him, suspended him from practicing law for ninety days, and required him to take a professional responsibility exam. The New Mexico Supreme Court's opinion focused on Mr. Ferguson's inconsistent treatment of the Ferrari—observing he used Motiva's dealership license to purchase, title, and register the Ferrari to avoid taxes while intending to use the Ferrari as his personal vehicle. The court determined Mr. Ferguson could not claim Motiva owned the Ferrari when it benefited him, and then deny ownership when it would mean a financial loss.

## E. *The Adversary Proceeding*

On September 2, 2021, the Trustee filed a complaint against Mr. Ferguson, Dealerbank, Armageddon, and other related entities alleging eight counts.[11] After a trial, the Bankruptcy Court entered an opinion ("Opinion") and judgment in favor of the

---

[11] The Trustee alleged the following: Count I – Turnover; Count II – Voidable transfers under 11 U.S.C. § 548(a)(1)(A); Count III – Voidable transfers under 11 U.S.C. § 548(a)(1)(B); Count IV – Voidable transfers under state law and punitive damages (actual fraud); Count V – Voidable Transfers under state law (constructive fraud); Count VI – Breach of fiduciary duties and punitive damages; Count VII – Alter ego / Veil piercing; and Count VIII – Disallowance of claims. *See Complaint* at 16–27, *in* Appellants' App. at 41–52.

Trustee on seven of the eight counts.[12]

The Bankruptcy Court found the evidence at trial showed Motiva never filed a federal tax return and Mr. Ferguson's tax returns revealed he treated Motiva as a "disregarded entity" under New Mexico law. The Bankruptcy Court noted such treatment implied Mr. Ferguson was the sole owner of Motiva. The Bankruptcy Court concluded this circumvented proper accounting principles because two other members allegedly held interests in Motiva.

Additionally, the Bankruptcy Court reviewed Mr. Ferguson's tax returns from 2016–2019, which do not mention Turbo, but do show expenses for Motiva on Mr. Ferguson's Schedule C attached to his 2016 tax return including a $575,082 "research and experimental" expense that appears to be Mr. Ferguson's investment in the Turbo Kit Project. The Bankruptcy Court noted the Schedule C in both Mr. Ferguson's 2017 and 2018 tax returns also appears to include Turbo Kit Project income and related expenses for Motiva (together with the 2016 tax return the "Tax Forms"). Notably, Turbo does not appear on Mr. Ferguson's tax returns until 2020, and there, Mr. Ferguson's Schedule C states Turbo is a sole proprietorship. The Bankruptcy Court found this contradicted Mr. Ferguson and Mr. Rochau's testimony.[13] The Bankruptcy Court also found the tax returns established Mr. Ferguson began or acquired Turbo in 2020.

---

[12] The Bankruptcy Court did not find in favor of the Trustee on the Turnover claim — Count I. Opinion at 18, *in* Appellants' App. at 526.

[13] This is one of many contradictions in Mr. Ferguson's various representations to the courts and taxing authorities, and in various financial forms. The Bankruptcy Court

The Bankruptcy Court determined Mr. Ferguson's tax treatment and inconsistent representations supported the following conclusions: (i) Appellants were liable under 11 U.S.C. § 548(a)(1)(A), (a)(1)(B) and N.M. Stat. Ann. § 56-10-18(A)(1), (A)(2) for fraudulent transfer of the vehicles; (ii) Mr. Ferguson was liable for breaching his fiduciary duty to Motiva; and (iii) Mr. Ferguson was liable for Motiva's debts, piercing the veil between him and Motiva. Additionally, the Bankruptcy Court disallowed Appellants' claims until they paid the judgments against them in full. Appellants filed a motion for reconsideration, which the Bankruptcy Court denied.[14] This appeal followed.[15]

## II. Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[16] Appellants timely appealed the judgment and order denying reconsideration, which are final orders.[17] No party elected to have the district court hear the appeal. Accordingly, this Court has jurisdiction to hear this appeal.

---

identified several instances of contradictions and changes in positions. Opinion at 7–8, *in* Appellants' App. at 515–16.

[14] *Order on Motion for Reconsideration*, *in* Appellants' App. at 594.

[15] Appellants do not appear to challenge any findings or conclusions in the Order Denying Reconsideration.

[16] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[17] *See Adelman v. Fourth Nat'l Bank & Tr. Co. (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990) (treating an order adjudicating all claims in an adversary proceeding as a final order); *In re Boydstun*, No. 19-20, 2020 WL 241492, at *1 (10th Cir. BAP Jan. 16, 2020) (unpublished) ("An order denying a motion under Rule 59(e) or

## III.    Issues on Appeal and Standard of Review

The Court identifies five issues on appeal.[18] First, Appellants challenge the

Bankruptcy Court's application of quasi estoppel, which we review for abuse of

_____

Rule 60(b) is final for purposes of appellate review if the underlying order from which relief is sought was also final.") (citing *Stubblefield v. Windsor Cap. Grp.,* 74 F.3d 990, 993 (10th Cir. 1996)).

[18] Appellants list the following as the issues on appeal:

(1) Whether the Bankruptcy Court erred in failing to follow Tenth Circuit law governing the duty of consistency?

(2) Whether the Bankruptcy Court erred in failing to recognize that the Debtor owned only bare legal title to the vehicles at issue and that consequently the vehicles were never included in the Debtor's bankruptcy estate as a matter of law?

(3) Whether the Bankruptcy Court erred in finding that Mr. Ferguson breached his fiduciary duty to Debtor by transferring an enterprise developing an engine turbocharging system and related assets without adequate compensation when the evidence demonstrated that the Debtor had no ownership interest in the enterprise or related assets?

(4) Whether the [ ] Court erred by imposing an irrelevant and unreasonable measure of damages, assuming such a breach occurred?

Appellants' Opening Br. 1. The fifth issue comes before this Court in Appellants' argument that "[r]ecognition that Debtor owned only naked legal title to the cars necessarily negates the judgment about Appellant Mr. Ferguson on Count VI, for Alter Ego/Veil Piercing liability." *Id.* at 27. Appellants did not present this issue as an enumerated issue on appeal. Accordingly, this Court will analyze whether Appellants waived the issue.

The Trustee asserts the issues as follows:

(1) "At the time the subject vehicles were acquired, was Motiva the owner of the vehicles?";

(2) "[W]hether Mr. Ferguson breached his fiduciary duties"; and

(3) "[W]hether the Bankruptcy Court's award of damages for breach of fiduciary duty was proper[.]"

Appellee's Opening Br. 1–3.

10

discretion.[19] Second, Appellants challenge the Bankruptcy Court's finding that Motiva owned the vehicles, which we review for clear error.[20] Third, Appellants challenge the Bankruptcy Court's factual finding that Motiva owned the Turbo Kit Project, and legal conclusion that Mr. Ferguson breached his fiduciary duty to Motiva by transferring the Turbo Kit Project without adequate compensation. We review factual findings for clear error and legal conclusions de novo.[21] Fourth, Appellants challenge the Bankruptcy Court's damages award. We review the methodology to determine damages de novo and the damages calculation for clear error.[22] Finally, Appellants challenge the Bankruptcy

---

[19] Appellants assert the Bankruptcy Court erred by "failing to follow Tenth Circuit law on the duty of consistency" and by applying quasi estoppel contending a de novo standard of review applies. Appellants' Opening Br. 1. The Tenth Circuit has not analyzed a standard of review for when a lower court invokes and applies the doctrine of quasi estoppel; however, the Tenth Circuit has held the abuse of discretion standard applies when invoking judicial estoppel. *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1207 (10th Cir. 2017) (citing *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *In re Riazuddin*, 363 B.R. 177, 182 (10th Cir. BAP 2007) (citing cases). Similarly, the Ninth Circuit BAP reviewed a court's use of quasi-estoppel principles for abuse of discretion. *See Wolf v. Jacobson (In re Jacobson)*, No. ADV. 07-01404-RK, 2010 WL 6259967, at *3 (9th Cir. BAP July 30, 2010) (unpublished), *aff'd in part, rev'd in part*, 676 F.3d 1193 (9th Cir. 2012).

[20] Factual findings are reviewed for clear error. *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 634 B.R. 559, 576 (10th Cir. BAP 2021), *aff'd*, No. 22-1005, 2022 WL 2679049 (10th Cir. July 12, 2022) (unpublished) (quoting *In re Kearney*, 625 B.R. 83, 93 (10th Cir. BAP 2021)).

[21] *Id.* Whether Mr. Ferguson breached his fiduciary duty to Motiva is a legal conclusion reviewed de novo. *Montoya v. Goldstein (In re Chuza Oil Co.)*, 639 B.R. 586, 592 (10th Cir. BAP 2022) (citing *Zubrod v. Kelsey (In re Kelsey)*, 270 B.R. 776, 779 (10th Cir. BAP 2001)), *rev'd in part*, 88 F.4th 849 (10th Cir. 2023).

[22] *S. Colo. MRI, Ltd. v. Med-Alliance, Inc.*, 166 F.3d 1094, 1100 (10th Cir. 1999).

11

Court's decision to pierce the corporate veil, which we review for abuse of discretion.[23]

An abuse of discretion occurs when "the [trial] court's decision is 'arbitrary, capricious or whimsical,' or results in a 'manifestly unreasonable judgment.' "[24] "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."[25]

Clear error occurs when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[26] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[27] Moreover, when reviewing findings of fact under the clearly-erroneous standard, "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."[28]

---

[23] The decision to pierce the corporate veil is reviewed for abuse of discretion. *Boxer F2, L.P. v. Bronchick*, 722 F. App'x 791, 798 (10th Cir. 2018) (unpublished) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 709 (10th Cir. 2005)).

[24] *Moothart v. Bell*, 21 F.3d 1499, 1504–05 (quoting *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987)).

[25] *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).

[26] *Bloom*, 634 B.R. at 576 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[27] *Id.*

[28] *Id.* (quoting Fed. R. Civ. P. 52(a)(6)).

IV.    **Analysis**

A. *The Bankruptcy Court did not abuse its discretion by applying the doctrine of quasi estoppel.*

Barring Mr. Ferguson from claiming Motiva did not own the vehicles, the Bankruptcy Court declined to allow a free-for-all with the truth designed to financially benefit Mr. Ferguson.

i.    The Bankruptcy Court applied the quasi-estoppel doctrine.

Appellants contend the Bankruptcy Court failed to follow Tenth Circuit law on the duty of consistency. Appellants argue the Bankruptcy Court applied the duty of consistency to reach this decision in error because the Tenth Circuit law concerning the duty of consistency is reserved for cases involving a federal taxing agency, official, or taxing authority. Appellants emphasize the Bankruptcy Court's analysis was "devoid of citations to Tenth Circuit law" signaling the "questionability of the analysis."[29]

The Trustee contends the Bankruptcy Court did not err because, in determining Motiva owned the vehicles, the Bankruptcy Court relied on a proper application of the principles underlying the doctrine of quasi estoppel despite citing cases applying the duty of consistency. The Trustee argues the duty of consistency is encompassed within the broader doctrine of quasi estoppel.

We agree with the Trustee. The duty of consistency and quasi estoppel are both equitable doctrines used to reach the common equitable goal to "estop a party from accepting benefits of a transaction or statute and then subsequently taking an inconsistent

_____

[29] Appellants' Opening Br. 19.

13

position to avoid corresponding obligations or effects."[30] Several federal courts have

applied the principles of quasi estoppel under the banner of the duty of consistency, often

using the terms interchangeably.[31]

An important distinction, however, is the duty of consistency is a more specific

principle in the realm of tax law, ensuring taxpayers are consistent in their treatment of

items on their tax returns and dealings with taxing authorities.[32] Courts generally apply

the duty of consistency where (i) a taxpayer, (ii) makes contradicting representations to,

(iii) a federal taxing authority, (iv) to obtain favorable tax treatment.[33] In contrast, quasi

estoppel is broader in that it applies in various legal contexts to prevent individuals from

taking inconsistent positions when it would be unfair to do so. While they share a

common theme of consistency, the two concepts have different applications and

implications in the legal world.

Courts have applied the doctrine of quasi estoppel when a party presents

inconsistent positions based on the context.[34] Generally, courts apply quasi estoppel when

---

[30] *Davidson v. Davidson (In re Davidson),* 947 F.2d 1294, 1297 (5th Cir. 1991).

[31] *See, e.g.*, *LeFever v. Comm'r*, 100 F.3d 778, 784 n.1 (10th Cir. 1996) ("The doctrine is known either as quasi-estoppel or the duty of consistency. . . . We will refer to it as the duty of consistency."); *Eagan v. United States*, 80 F.3d 13, 17 (1st Cir. 1996) ("The duty of consistency is a type of equitable estoppel, also known as 'quasi-estoppel.'"); *In re Baker Hughes, Inc.*, 215 F.3d 1297, 1301–02 (Fed. Cir. 2000) (same) (citing *Lewis v. Comm'r*, 18 F.3d 20, 26 (1st Cir. 1994)).

[32] *LeFever*, 100 F.3d at 786.

[33] *Id.*

[34] *See, e.g.*, *In re Davidson*, 947 F.2d 1294 (5th Cir. 1991) (applying *per se* quasi estoppel in support payment nondischargeability action); *In re Liao*, 553 B.R. 584, 607–08 (Bankr. S.D. Tex. 2016) (applying quasi estoppel to prevent a debtor from amending

"a party (1) with knowledge of the relevant facts (2) takes a position inconsistent with its former position (3) which is to the disadvantage of another."[35] Appellants assert when the duty of consistency is applied to nontaxing authorities, detrimental reliance is required. However, quasi estoppel typically "does not require misrepresentations, ignorance, or detrimental reliance," but does require the estopped party to have gained some benefit from its earlier position.[36]

---

his schedules to benefit from holding inconsistent positions on his homestead exemption,); *In re CPJFK, LLC*, 496 B.R. 290, 303 (Bankr. E.D.N.Y 2011) (applying quasi estoppel to preclude a debtor from rejecting a lease for purposes of the trustee's motion to sell certain property when the plan of reorganization depended on assuming the same lease). *See also, e.g.*, *Jamison v. Allen*, 377 S.W.3d 819, 823–24 (Tex. App. 2012) (concluding homeowners were estopped on basis of quasi estoppel from attacking neighbor's use of noncompliant material on the exterior of their house when homeowners used the same material); *Rockstad v. Erikson*, 113 P.3d 1215, 1222–23 (Alaska 2005) (finding under the doctrine of quasi estoppel, the appellant could not sign a deed of trust to secure a loan and later assert the deed of trust was invalid under Alaska law to prevent foreclosure on the secured property); *KTVB, Inc. v. Boise City*, 486 P.2d 992 (Idaho 1971) (holding appellants were estopped from attacking a bidding and award process to which they previously acquiesced). *See also* Overview, Bankr. Evid. Manual § 4:1 (2023 ed.) (citing *In re Kelley*, 216 B.R. 806 (Bankr. E.D. Tenn. 1998)).

[35] Overview, Bankr. Evid. Manual § 4:1 (2023 ed.).

[36] *Id.* Appellants also contend when the duty of consistency is applied to nontaxing authorities there is a mutuality requirement as well. The mutuality requirement argument was not raised until Appellants' Reply Brief rendering the argument waived. *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 n.1 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.") (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009)).

Here, the Bankruptcy Court held:

[w]hen it comes to the serious business of paying taxes, the law does not permit a taxpayer to say one thing to the taxing authorities and the opposite to someone else.

. . .

Applying this sensible and fair principle, Ferguson is barred from telling this Court that Motiva does not own the [vehicles], because he previously represented to the New Mexico Taxation and Revenue Department that Motiva did own them. Any other rule would result in a free-for-all with the truth, sanctioned by the courts. Ferguson made his bed when he avoided paying excise tax on the [vehicles]. Now he must lie in it.[37]

While the Bankruptcy Court never clearly identifies a legal standard and cites to authority related to the duty of consistency,[38] we conclude the Bankruptcy Court applied the principles underlying the doctrine of quasi estoppel to reach its conclusion and not the duty of consistency. The Bankruptcy Court found Mr. Ferguson took positions inconsistent with former positions to the detriment of others, specifically creditors. The Bankruptcy Court relied on authority applying equitable principles to prevent a party from benefitting from inconsistent representations and carefully considered the facts to reach its decision. Because the choice to apply quasi estoppel was neither arbitrary, capricious, or whimsical, nor did it result in a manifest injustice, we conclude the Bankruptcy Court did not abuse its discretion by applying the equitable doctrine to analyze Mr. Ferguson's multiple inconsistent representations.

---

[37] Opinion at 20–21, *in* Appellants' App. at 528–29.

[38] *See id.*

ii.     *In re Sampson*

Appellants also contend the Bankruptcy Court's conclusion is at odds with the

Tenth Circuit's rejection of quasi estoppel in *In re Sampson*; the Trustee asserts

Appellants' reliance on *In re Sampson* is misplaced.[39] We agree Appellants misconstrue

*Sampson*.

In *Sampson*, the Tenth Circuit analyzed the application of quasi estoppel to a

§ 523(a) nondischargeability claim.[40] There, the debtor sought to discharge a debt owed

to his former wife contending the money owed was intended to be a property

settlement.[41] The debtor explained the divorce settlement agreement only designated the

payments as support payments to allow him to deduct the payments for tax purposes.[42]

The bankruptcy court determined the debt was nondischargeable because the settlement

agreement provided the payments to his former spouse were support payments.[43]

On appeal, the Tenth Circuit refrained from adopting a *per se* application of quasi

estoppel to conclude the debt was nondischargeable as support simply because the debtor

claimed the payments as support on his tax returns.[44] Instead, the Tenth Circuit noted the

center of the inquiry was the parties' intent and substance behind the obligation and

---

[39] 997 F.2d 717 (10th Cir. 1993).

[40] *Id.*

[41] *Id.* at 720.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 724 n.6.

determined the debtor's tax treatment was probative of the parties' mutual intent and the substance of the obligation.[45] Concluding the evidence showed the payments were intended to be support and were, in substance, support payments, the Tenth Circuit affirmed the bankruptcy court.

Accordingly, the Tenth Circuit did not outright reject any application of quasi estoppel. Instead, the *Sampson* court rejected a *per se* application of quasi estoppel in § 523(a)(5) dischargeability actions in favor of a case-by-case factual inquiry into the parties' intent. The Tenth Circuit's rejection of a *per se* application of quasi estoppel in § 523(a)(5) claims has no bearing on whether a court may apply the principles of quasi estoppel to address the reality of a party's inconsistent representations in other circumstances. Simply put, we join those courts that are reluctant to allow parties to have their cake and eat it too.

B. *The Bankruptcy Court did not clearly err in finding Motiva owned the vehicles to conclude a fraudulent transfer occurred.*

To find Motiva owned the vehicles and a fraudulent transfer occurred, the Bankruptcy Court applied quasi estoppel principles based on Motiva's tax treatment and

---

[45] *Id.* at 724–25 (concluding the support payments' tax treatment strengthens the position that the parties intended the obligation as maintenance) (citing *Tilley v. Jessee*, 789 F.2d 1074, 1078 n.3 (4th Cir. 1986) (finding debtor's treatment of obligation as nondeductible expense strengthened debtor's position that obligation was intended as property settlement)).

18

inconsistencies presented in other proceedings.[46]

Appellants present several arguments to show the Bankruptcy Court erred in concluding Motiva owned the vehicles—none of which are persuasive. First, Appellants assert Motiva only held bare legal title to vehicles, and therefore the vehicles were not property of the estate over which the Bankruptcy Court could exercise jurisdiction. Next, Appellants challenge the Bankruptcy Court's reliance on Motiva's tax treatment of the vehicles and contend the Bankruptcy Court's application of quasi estoppel violated the Tenth Circuit's directive in *Sampson*, which requires examining substance over form.[47] Third, Appellants insist the third-party payment for the vehicles sufficiently rebutted any presumption of ownership based on Motiva holding title to the vehicles. Finally, Appellants contend the Bankruptcy Court erred by failing to recognize Motiva only ever held the vehicles in a resulting trust.

The Trustee contends the Bankruptcy Court examined the evidence to determine the parties intended for Motiva to own the vehicles and applied the principles of quasi estoppel to properly conclude Motiva owned the vehicles. Additionally, the Trustee asserts title to a vehicle is prima facie evidence of ownership in New Mexico. Thus, once prima facie evidence was provided, the burden to rebut the presumption shifted to Appellants to show Motiva did not have an ownership interest in the vehicles, and

---

[46] Appellants do not dispute a transfer occurred; they only dispute whether Motiva owned the vehicles, making them part of the bankruptcy estate and transfer thereof a fraudulent transfer.

[47] *See* Appellants' Opening Br. 20–21.

Mr. Ferguson failed to present rebuttal evidence sufficient to overcome the presumption.

### i.   Jurisdiction

Here, the Bankruptcy Court properly exercised jurisdiction over the vehicles. We reject Appellants' argument that a bankruptcy court's jurisdiction over a single asset can be broken down and determined by the asset's legal and equitable interest.[48] Determining whether property is estate property is a core proceeding and bankruptcy courts have jurisdiction over core proceedings.[49] Courts have routinely determined that bankruptcy courts have jurisdiction to determine the scope of a debtor's interest in property.[50] More specifically, a bankruptcy court has subject matter jurisdiction under 28 U.S.C. § 157(b)(2)(H) to decide a fraudulent transfer claim. Thus, contrary to Appellants'

---

[48] § 541(a)(1); *see also In re Brown*, 521 B.R. 205, 216 (Bankr. S.D. Tex. 2014), *adopted,* CIV. A. No. H-14-2967, 2014 WL 7342435 (S.D. Tex. Dec. 23, 2014) (unpublished), *aff'd in part, appeal dismissed in part,* 807 F.3d 701 (5th Cir. 2015) ("*In rem* jurisdiction is a court's jurisdiction to determine rights in property in the court's possession, known as the *res. In rem* bankruptcy jurisdiction is premised on the bankruptcy court's possession of the bankruptcy estate, which initially includes all legal or equitable interests of the debtor in property. . . .") (internal quotations and citations omitted).

[49] *In re Hafen*, 616 B.R. 570, 578 (10th Cir. BAP 2020) ("The jurisdiction to determine what is property of the bankruptcy estate lies exclusively with the bankruptcy court."); *In re Gardner*, 913 F.2d 1515, 1517 (10th Cir. 1990) ("Bankruptcy courts have jurisdiction over core proceedings.").

[50] *See, e.g., Hafen*, 616 at 578; *Churchill Tech., Inc. v. Cribari (In re Churchill Tech. Inc.)*, 236 B.R. 580, 582 (Bankr. W.D.N.Y. 1999) ("Litigation to determine the scope of that [debtor's] interest is a proceeding that relates to a case under title 11 of the United States Code, and is, therefore, within the scope of the court's jurisdiction[.]"); *In re DiBerto*, 171 B.R. 461, 475 (Bankr. D.N.H. 1994) ("[W]hen the equitable interest is subject to unresolved conflicting claims of ownership, the Court clearly has jurisdiction to determine what is and what is not property of the estate.").

20

contentions, the Bankruptcy Court did not create jurisdiction by applying quasi estoppel.[51]

### ii.    *In re Sampson*

We also disagree with Appellants' argument that the Bankruptcy Court's determination was at odds with Tenth Circuit law. While the *Sampson* court rejected a *per se* application of quasi estoppel in § 523(a)(5) dischargeability actions, it did not reject the application of quasi estoppel in other circumstances. Thus, *Sampson* provides no directive here.

### iii. Rebutting the Presumption of Ownership

We are also unpersuaded by Appellants' argument the Bankruptcy Court erred in finding Motiva owned the vehicles because they sufficiently rebutted the presumption of ownership by showing a third-party purchased the vehicles—the same argument

---

[51] Appellants argue no fraudulent transfer occurred because the vehicles were never estate property and the Bankruptcy Court's use of quasi estoppel to conclude the vehicles belonged to the bankruptcy estate manufactured subject matter jurisdiction. Relying on Fed. R. Bankr. P. 8014(f), Appellants submitted a letter to this Court providing "supplemental authority" to support its newly raised argument that a court cannot manufacture subject matter jurisdiction using quasi estoppel. Although we agree with the general proposition cited in those cases, they are not applicable here. Rule 8014(f) concerns submission of "pertinent and significant authorities" that come to a party's attention after the party's brief has been filed—or after oral argument but before a decision. The supplemental authority Appellants provided is neither pertinent nor significant. And we note obvious dangers in sending the Court a letter citing authorities that were in existence, but that counsel failed to include in briefing, suggesting tardy research is responsible for these late citations. Additionally, the proper purpose of such a letter is to advise the court of "new authorities" a party has learned of after oral argument, not to interject an available but previously unmentioned issue for decision. *Niemi v. Lasshofer*, 728 F.3d 1252, 1262 (10th Cir. 2013) (analyzing Fed. R. App. P. 28(j), which is nearly identical to Rule 8014(f)).

presented to the Bankruptcy Court and rejected as insufficient, and the same argument presented and rejected by the New Mexico State Court.

In New Mexico, a vehicle's title serves as prima facie evidence allowing for a presumption of ownership.[52] The presumption of ownership, however, is rebuttable.[53]

As explained, "a finding is not clearly erroneous unless it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made."[54] Here, the Bankruptcy Court considered the evidence to determine Motiva owned the vehicles relying heavily on Mr. Ferguson's use of Motiva's dealer's license to benefit himself financially by avoiding excise taxes.[55] It also relied on the purchase forms used to purchase the vehicles, Motiva's representations of ownership on its tax forms, and the various inconsistencies related to the vehicles' ownership presented by Mr. Ferguson in the state court litigation to conclude Motiva owned the vehicles. In light of this evidence, we are not left with a

---

[52] N.M. Stat. Ann. § 66-3-12.

[53] *See Fernandez v. Ford Motor Co.*, 879 P.2d 101 (N.M. Ct. App. 1994).

[54] *In re Mosher*, 833 F. App'x 201, 203 (10th Cir. 2020) (unpublished) (quoting *Gillman v. Ford (In re Ford)*, 492 F.3d 1148, 1153 (10th Cir. 2007)).

[55] New Mexico currently imposes a 4% excise tax on the sale of motor vehicles in the state. N.M. Stat. Ann. §§ 7-14-3 to -4. But a New Mexico car dealer may avoid this tax if the car is registered with a "dealer plate." N.M. Stat. Ann. § 66-3-401(A). Alternatively, a dealer may register and title a vehicle included in a dealer's inventory in the name of the dealer upon payment of the registration fee applicable to that vehicle, but without payment of the motor vehicle excise tax, provided the vehicle is subsequently sold or leased in the ordinary course of business in a transaction subject to the motor vehicle excise tax or the leased vehicle gross receipts tax. N.M. Stat. Ann. § 66-3-401(D).

definite and firm conviction the Bankruptcy Court made a mistake and it was not clear error for the Bankruptcy Court to find Motiva owned the vehicles.

    iv. <u>Resulting Trust</u>

Finally, we reject Appellants' contention Motiva held the vehicles in a resulting trust for the benefit of the third-party that paid for them. Mr. Ferguson's argument presumes, without authority, a party's payment for property automatically vests equitable ownership in that party and/or sufficiently rebuts the presumption regarding ownership. New Mexico resulting-trust law does not support such a conclusion.[56]

In New Mexico, a resulting trust may arise when a third-party payor purchasing property "directs that the vendor convey the property to another person."[57] These circumstances "raise [a rebuttable] inference that such person does not intend that the party taking or holding the property should also have the beneficial interest therein. . . ."[58] To successfully establish a resulting trust arose requires a party to show "the absence of any intention to give the beneficial interest to the transferee."[59]

The Bankruptcy Court rejected the argument the third-party payment was dispositive to legal ownership, and instead applied quasi-estoppel principles to determine

---

[56] *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.") (superseded by statute on other grounds).

[57] *Aragon v. Rio Costilla Co-op. Livestock Ass'n*, 812 P.2d 1300, 1303 (N.M. 1991); *Bassett v. Bassett*, 798 P.2d 160, 167 (N.M. 1990) (concluding a resulting trust may occur when property is purchased and paid for by a party that then directs the seller to convey the property to another party).

[58] *Aragon*, 812 P.2d at 1303.

[59] *Id.*

Appellant was equitably estopped from claiming he owned the vehicles based on his inconsistent representations.[60] Moreover, these inconsistent representations do not reflect an absence of Mr. Ferguson's intent to give the beneficial interest to Motiva to establish a resulting trust under New Mexico law. Thus, because we are not left with a definite and firm conviction the Bankruptcy Court made a mistake, we cannot conclude the Bankruptcy Court clearly erred in finding Motiva owned the vehicles.

C. *The Bankruptcy Court did not err in concluding Mr. Ferguson breached his fiduciary duty to Motiva.*

The Bankruptcy Court concluded the Turbo Kit Project belonged to Motiva and Mr. Ferguson breached his fiduciary duties when he transferred the Turbo Kit Project to Turbo without reasonable compensation.

i. <u>The Bankruptcy Court did not clearly err in finding Motiva owned the Turbo Kit Project.</u>

Appellants argue the Bankruptcy Court clearly erred by relying only on the Tax Forms to conclude Motiva owned the Turbo Kit Project. Appellants contend the asset development for the Turbo Kit Project under Motiva was paid for by third parties, and thus a resulting trust arose regarding the assets.[61]

---

[60] Appellants argue no New Mexico authority adopts quasi estoppel to determine property ownership, but acknowledged no authority exists rejecting it either.

[61] The record does not reveal Appellants argued a resulting or constructive trust formed related to the Turbo Kit Project below. Because the argument was raised for the first time on appeal with respect to this claim, we conclude Appellants waived the argument. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1283 (10th Cir. 2013) (quoting *Quigley v. Rosenthal*, 327 F.3d 1044, 1069 (10th Cir. 2003)).

The Trustee asserts the Bankruptcy Court relied on more than just the Turbo Kit Project tax treatment to conclude the Turbo Kit Project was a Motiva asset. Specifically, the Trustee contends he produced substantial evidence of Motiva's ownership including Motiva's promotion of the Turbo Kit Project. The Trustee also submitted evidence the Turbo Kit Project used Motiva's name implying it was a division of Motiva. And finally, Turbo's nonexistence prior to 2017 further supports that the Turbo Kit Project was a Motiva asset.

The Tax Forms showed expenses for Motiva included "research and experimental" expenses and other expenses and income related to the Turbo Kit Project. The Bankruptcy Court reasoned Mr. Ferguson's tax treatment of the Turbo Kit Project expenses as Motiva expenses on the Tax Forms persuaded it to conclude Motiva owned the Turbo Kit Project. However, the Trustee is correct—this was not the sole basis for the Court's conclusion. The Bankruptcy Court noted several inconsistent facts as well as the Turbo Kit Project's use of Motiva's property, name, storage, purchasing power, and address to support its determination that the Turbo Kit Project was part of Motiva. The Bankruptcy Court also noted Mr. Ferguson and others relied heavily on Motiva for the Turbo Kit Project's development and the asserted owner, Turbo, did not exist until 2020—long after the Turbo Kit Project's inception.[62]

---

[62] The Trustee also cites to promotional videos presented at the trial supporting Motiva was at some point associated with the Turbo Kit Project. *See* Appellee's Opening Br. 25.

25

We see no error in the Bankruptcy Court finding Motiva owned the Turbo Kit Project at the time Mr. Ferguson transferred it to Turbo.

ii. <u>The Bankruptcy Court did not err in concluding Mr. Ferguson breached his fiduciary duty to Motiva.</u>

Appellants do not dispute Mr. Ferguson owed a fiduciary duty to Motiva, nor do they dispute there was no reasonable compensation for the transfer. Instead, Appellants contend there was no breach of fiduciary duty because the Turbo Kit Project did not belong to Motiva. Accordingly, if Motiva did not own the Turbo Kit Project, then Mr. Ferguson could not have breached his fiduciary duty by transferring the assets to another entity.

Because we determined the Bankruptcy Court did not err by finding the Turbo Kit Project belonged to Motiva at the time Mr. Ferguson transferred it to Turbo without reasonable compensation, we also conclude the Bankruptcy Court did not err in deciding Mr. Ferguson breached his fiduciary duty.

D. *The Bankruptcy Court did not err by imposing damages.*

The Bankruptcy Court determined Mr. Ferguson breached his fiduciary duty by transferring an asset away from Motiva for no compensation. The Court based the damages award on the cost to develop the Turbo Kit Project as evidenced by the "research and experimentation" expense ("R&D Costs") on Mr. Ferguson's 2016 tax return.

Appellants argue the damages award does not have any basis in the record and should be reversed. Appellants assert the Bankruptcy Court *sua sponte* settled on the

damages award relying solely on the R&D Costs in the 2016 tax return and rejected the commonly used business or asset valuation methods—specifically the cost approach.[63] Appellants also contend the Bankruptcy Court erred by using the R&D Costs because it did not rely on any authority to support the methodology and no connection existed between the R&D Costs and the loss Motiva experienced. The Trustee contends the Bankruptcy Court appropriately assessed damages based on the evidence before it—the net investment calculated from the 2016 tax return.

In New Mexico, the injured party in a breach of fiduciary duty claim may be entitled to compensatory damages to put the injured party in the same place had the harm not occurred.[64] Once a court has determined damages are due, New Mexico courts generally accept the amount so long as the award is (i) supported by substantial evidence, and (ii) determined by a reasonable method.[65] It does not appear New Mexico requires a particular calculation method to determine the amount of compensatory damages: "As long as there is a reasonable method used to achieve an amount of damages, we will accept that amount."[66]

---

[63] *See* Appellants' Opening Br. 33. Appellants cited the following as the "common methods" to obtain a business or asset valuation: market approach, net asset or cost approach, and income approach.

[64] *Moody v. Stribling*, 985 P.2d 1210, 1220 (N.M. Ct. App. 1999) (quoting *Cent. Sec. & Alarm Co. v. Mehler*, 918 P.2d 1340, 1347 (N.M. Ct. App. 1996)).

[65] *Id.*

[66] *Id.* at 1220; *see also Jackson v. Goad*, 385 P.2d 279, 281–82 (N.M. 1963) (concluding when damages are certain, mathematical certainty as to the amount is not required for recovery).

The Trustee admitted he had not obtained a business valuation to calculate the damages but asserts the Bankruptcy Court employed the cost approach. The purpose of a cost approach is to determine the "cost of constructing a substitute property that provides the same utility as the subject property at its highest and best use."[67] The cost approach "measures damages based on the cost to obtain another asset of equal utility."[68]

Here, the Bankruptcy Court reasonably relied on the cost associated with the Turbo Kit Project and turned to substantial evidence—the "only verifiable number about the value of the [Turbo Kit Project] when Motiva claimed to own it"[69]—to calculate the damages. Given the calculation of damages for breach of fiduciary duty claims in New Mexico requires only substantial evidence and a reasonable method, and both are present here, we conclude the Bankruptcy Court did not err by awarding the damages based on the R&D Costs.

E. *The Bankruptcy Court did not abuse its discretion by piercing the corporate veil.*

The Bankruptcy Court determined Motiva and Mr. Ferguson were alter egos and pierced the corporate veil to find Mr. Ferguson liable for Motiva's debts. The Trustee argues Appellants did not adequately brief their challenge to the veil-piercing issue, and thus waived the issue. In reply, Appellants contend they adequately challenged the veil-

---

[67] *Hewlett-Packard Co. v. Benton Cnty. Assessor*, 356 P.3d 70, 75 (Or. 2015).

[68] *Better Holdco, Inc. v. Beeline Loans, Inc.*, No. 20CIV8686JPCSN, 2023 WL 2711417, at *7 (S.D.N.Y. Mar. 30, 2023) (unpublished). *See, e.g.*, *Cement-Lock v. Gas Tech. Inst.*, 618 F. Supp. 2d 856, 865 (N.D. Ill. 2009).

[69] Opinion at 25, *in* Appellants' App. at 533.

28

piercing through their quasi-estoppel argument and point to the sections in the opening brief where they discuss the issue.[70]

As a preliminary matter, this Court must determine whether this issue has been properly raised on appeal. In the Tenth Circuit, "[a]n issue not included in either the docketing statement or the statement of issues in the party's initial brief is waived on appeal."[71] Similarly, failure to properly raise an issue or argument in an opening brief constitutes waiver of that issue.[72]

Appellants did not challenge the veil-piercing determination as an issue on appeal or in their statement of issues in the opening brief.[73] Nor did Appellants adequately brief the issue in their opening brief. Instead, Appellants slip in a veil-piercing argument related to the discussion of the Bankruptcy Court's application of quasi estoppel and contend the Bankruptcy Court's error on that issue negated the veil-piercing judgment against Mr. Ferguson.[74] Accordingly, we conclude Appellants waived this argument.

Even assuming Appellants had properly raised and argued this issue, the Bankruptcy Court did not abuse its discretion by piercing the corporate veil. In New

---

[70] Appellants' Reply Br. 22–23.

[71] *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) (quoting *Adams-Arapahoe Joint Sch. Dist. No.28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989)).

[72] *Id.*

[73] Appellants' *Statement of Issues on Appeal*, Bankr. ECF No. 154; Appellants' Opening Br. 1.

[74] *See* Appellants' Opening Br. 27.

29

Mexico, to pierce the corporate veil, a court must find instrumentality or domination, improper purpose, and proximate causation.[75]

To the extent Appellants challenge the veil piercing, they only argue Motiva did not own the vehicles or Turbo Kit Project. For the sake of argument, even if the Bankruptcy Court was incorrect in these conclusions, which it was not, other facts supported the veil piercing. For example, Motiva still had other assets to pay creditors— the Ferrari, settlement funds from the Valles Litigation, and the turbo kit inventory—that Mr. Ferguson stripped from Motiva. Contrary to Appellants' assertions, the Bankruptcy Court identified multiple factors, including but not limited to, Mr. Ferguson's control over Motiva and its finances, the lack of corporate formalities, Mr. Ferguson's tax treatment, chronic insolvency, and harm to creditors.[76]

Accordingly, we conclude, even if Appellants had sufficiently briefed this issue, the Bankruptcy Court did not abuse its discretion in piercing the corporate veil.

## V.    Conclusion

For the foregoing reasons, we AFFIRM the Bankruptcy Court.

---

[75] *Harlow v. Fibron Corp.*, 671 P.2d 40, 43 (N.M. Ct. App. 1983).

[76] Opinion at 14–17, *in* Appellants' App. at 522–25.

30